**INTER–OCEAN CASUALTY CO. v. LENEAR.**

No. 11978.

Court of Civil Appeals of Texas. Dallas.

May 16, 1936.

Rehearing Denied June 27, 1936.

Geo. K. Holland, of Dallas, for appellant.

John W. West, of Dallas, for appellee.

BOND, Justice.

This suit was instituted by William B. Lenear against the Inter-Ocean Casualty Company of Indiana, to recover upon an accident insurance policy and for statutory penalty and reasonable attorney's fees.

Appellee alleged that, while he was employed with the Texas Steel Company of Fort Worth, Tex., he made a written application to appellant for the policy sued on, and that the policy was issued and all premiums due thereon had been paid. On December 2, 1930, he sustained serious bodily injuries, which disabled him permanently and totally from performing the duties pertaining to his business or occupation, resulting from an accident caused by an explosion of a casting mold. He was employed by the steel company as a weigher of scrap metal and charging car operator, and, while so engaged, he was helping in pouring molten metal into the mold when the mold or metal exploded, throwing the molten steel on his body, causing the serious injuries which disabled him for a period of twenty-four months, and entitling him to indemnities at the rate of $80 per month.

Appellee further alleged that he complied with the policy's provisions with reference to giving notice of the accident and making proof of loss, for which the insurer paid him for a period of six months. He sought judgment for the sum of $1,440, as the unpaid eighteen months' indemnities, and for statutory penalty, interest, and attorney's fees.

Appellant defended by pleading a general demurrer, several exceptions, and a general denial; and specially pleaded the substance of the terms of the policy sued on: That appellant was insured under the occupation of "weigher and charging car operator," with the duties of "weighing scrap steel," classified by the company as risk "D" in the policy, carrying a premium

rate of $2.70 per month; that, at the time of the alleged accident and injury, appellee had changed his occupations to those of "ladleman" and "pourer" of hot metal, and was doing an act or thing pertaining to such occupations which were more hazardous than the occupations under which appellee was insured, classified as risk "X," carrying a premium rate of $5.60 per month; and, by virtue of the change of occupations and/or act or thing done, the accident indemnity of $80 per month, as specified in the policy, was reduced under the provisions of the policy to $38.61 per month for total disability and for half that amount for partial disability, with a refund of $30.63 on the premiums paid.

Appellant further specially pleaded that appellee at the time of said accident and injury and for a long time prior thereto carried with other companies, corporations, associations, and societies other insurance, covering the same loss as the loss covered by the policy sued on; that the appellee never at any time gave written notice to appellant of such other insurance; and that, by virtue of the policy, such indemnity as appellee might have been entitled to was proratable, and appellant's liability was reduced in proportion as the indemnity contracted bears to the total amount of like indemnity under all policies covering such loss, alleging that such other insurance carried by appellee totaled the sum of $3,465.

The cause being tried to a jury, at the conclusion of all the testimony, the trial court discharged the jury, entered judgment in favor of appellee and against the appellant for the sum of $1,262.47, as indemnities due under the policy sued on, and the further sum of $114.15 as accrued interest, $141.50 as penalty, and $328 as attorney's fees, aggregating the sum of $1,886.12.

The material facts are these: On April 5, 1927, appellee made a written application to the appellant for a policy of accident and health insurance, in which he stated that he was employed by the Texas Steel Company, a manufacturer of steel products, specifying that his occupations were "weigher and charging car operator," and that all his duties were "weighing scrap steel," and therein agreeing that the insurance applied for shall be based upon the company's classification of his stated occupations as risk "D," carrying a rate of $2.70 per month.

The policy of insurance provides, among other things, for the payment of $80 monthly accident indemnity "resulting, directly and exclusively of all other causes, from bodily injuries sustained during the life of this policy, solely through eternal, violent and accidental means," and contains the following standard provisions:

"(1) This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance, except as it may be modified by the Company's classification of risks and premium rates in the event that the insured is injured or contracts sickness after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation. * * *

"(17) If the insured shall carry with another Company, corporation, association or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such portion of the indemnity promised as the indemnity bears to the said total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

At the time the application was made, the policy of insurance issued, and the injuries sustained, the insurance company maintained a manual of classified risks, among which were listed the occupations of "ladleman" and "pourer" in a steel mill or foundry, and each classified as risk "X", on account of their being extra hazardous occupations, and carried a premium rate of $5.60 per month for the same indemnities as provided in the policy sued on.

The testimony shows, and the trial court so found, that while appellee was temporarily engaged in the performance of and acting as a "ladleman" and "pourer," pouring molten steel from a ladle into a mold, the molten steel and mold exploded, causing the hot metal to be thrown in the direction of the appellee, striking his body,

causing burns and injuries which, from the date of the accident, continuously and totally disabled and prevented the appellee from performing any and every duty pertaining to his business or occupation for a period of twenty-four months; and that the insurance company had paid the insured the sum of $80 per month for the first six months of such disability in settlement of the indemnity for the time stated.

The record further shows that at the time of the accident, without the knowledge of appellant, the appellee carried with the Travelers Insurance Company of Hartford, Conn., insurance in the sum of $1,000, covering the same loss as covered by appellant's policy; and, on account of said loss, the Travelers Insurance Company, by a compromise settlement, has paid to appellee the sum of $700; and, further, by virtue of the Texas Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.), appellee's employer, Texas Steel Company, through a policy issued to it by Associated Indemnities Corporation, has paid to appellee indemnities of $2,465 for the injuries sustained as provided by the law.

Appellant's first contention is to the effect that, inasmuch as the appellee had changed his occupation from "weigher and charging car operator," classified by the appellant as risk "D," to the occupation of "ladleman" or "pourer," classified by the company as risk "X" and extra hazardous, and, at the time of the accident, was doing an act or thing pertaining to such occupations, the indemnity liabilities provided in the policy were automatically reduced in proportion as the premium paid would have purchased for such hazardous occupation, calculated to an amount of $38.61 per month for the period of total disability, and allowing a premium refund of $30.63.

As decisive of this proposition, appellee cites article 5050 of the 1925 Revised Statutes of Texas, which reads: "Every policy of insurance issued or delivered within this State by any life insurance company doing business within this State, shall contain the entire contract between the parties, and the application therefor may be made a part thereof"; and contends, as appellant's manual of classified risks was not attached to the policy of insurance, the manual became no part of the contract perforce of the quoted statute; therefore,

the company's liability under the policy is based on the amount of the indemnities specified therein, without regard to any reference made in the policy as to the company's manual of classified risks, reducing the amount of indemnities because of extra hazardous risks.

 It will be observed that the policy sued on is purely an accident policy, as distinguished by the Legislature from life insurance. The appellee, neither in pleading nor proof, attempted to show that the company is a life insurance company. In article 4716, defining insurance companies, the Legislature recognizes a clear distinction between a life insurance company and an accident insurance company. The article provides: "A life insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value, conditioned on the continuance or cessation of human life, or involving an insurance, guaranty, contract or pledge for the payment of endowments or annuities. An accident insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value, conditioned upon the injury, disablement or death of persons resulting from traveling or general accidents by land or water." From this, it will be observed that the statute gives a full and complete definition of a life insurance company and an accident insurance company, and no other definition can be considered in arriving at a conclusion as to whether or not any other organization of persons or capital will constitute such insurance companies. This distinction is further emphasized by the Legislature in defining and prescribing the condition of a life insurance policy. Article 4733, subd. 3, expressly provides that certain conditions pertaining to life insurance policies "shall not apply to purely accident and health policies." Obviously, the Legislature did not intend the law applicable to life insurance policies to apply to purely accident insurance.

 Prior to the revision of 1925, article 4955 of the old statute (Rev.St.1911) was as follows: "All the provisions of the laws of this state applicable to the life, fire, marine, inland, lightning, or tornado insurance companies, shall, so far as the same are applicable, govern and apply to all companies transacting any other kind of insurance business in this state, so far

as they are not in conflict with provisions of law made specially applicable thereto." Construing article 4955 with article 4953 of the old statute, being article 5050 of the 1925 revision, the Austin Court of Civil Appeals, in North American Accident Insurance Company v. Hodge et al., 208 S.W. 700, held, by virtue of this article alone was accident insurance brought under article 4953 (now 5050). Article 4953 purports to deal only with "life insurance." In the revision of 1925, article 4955 of the old statute was omitted, and, having been omitted, it is not now a part of our statutory law. Hatton v. Mutual Health & Accident Association (Tex.Civ.App.) 10 S.W. (2d) 239. It is plain, we think, that article 5050 relates and applies only to policies issued by a life insurance company and has no application whatever to accident policies.

This being true, the policy sued on expressly provides that the insurance is granted, conditioned and limited regarding change of occupations or any act or thing pertaining to any occupation classified by the company as more hazardous than that stated in the policy; and furthermore, in the application for the policy, which is attached thereto, the appellee agreed that the insurance shall be based upon appellant's classification of his occupations therein stated, and the indemnity be determined by the classification of the risk and the premium to be paid therefor in accordance with the company's manual.

■ It is a fundamental rule that contracting parties are conclusively presumed to have entered their contract with full knowledge of all of its terms and existing laws upon the subject which may affect the validity, formation, operation, discharge, interpretation, or enforcement thereof. The provision of the policy, prorating the indemnities payable to appellee hereinbefore quoted and the manual of classification of risks and premium rates not being inhibited by any statute affecting accident insurance; and, the appellee having changed his occupation from one specified and classified in the policy to one classified by appellant as more hazardous than the one stated in the policy, he is entitled only to recover the benefits which would have been provided in the policy, if he had paid the same amount of premium and had been engaged in the occupation of "weigher of scrap steel and charging car operator" in the steel mill or foundry, not a "ladleman" or "pourer" of hot metal.

■ Appellant further contends that the compensation insurance carried by appellee's employer, Texas Steel Company, with the Associated Indemnity Corporation, under which the appellee was paid indemnity for the same loss covered by its policy in the sum of $2,465, is such insurance carried by the insured as to reduce proratably appellant's liability under provision 17 of its policy, above quoted.

In passing, it might be said that the Workmen's Compensation Law is a tripartite arrangement, consisting of an agreement of the employer, employee, and the insurer, in consummation of which the employer makes the arrangements with and pays the premiums to the insurer without consulting the employee. When the insurance is thus procured, it is, in effect, as between the employer and the employee, a promise on the part of the employee to surrender all common-law rights of action for damages growing out of an accident in the course of his employment, and by the employer to forego all such defenses which he might have in defense of such action. The insurance serves the means of protecting both the employer and employee. While such insurance may be considered an indemnity in the sense that the insurer promises to pay the employee on contingencies, but, in reality, it is a protective arrangement sanctioned by law for the mutual benefit of the employer and the employee. It is not an insurance as contemplated within the terms of appellant's policy provision.

The provision of the policy, allowing a proration with other policies "carried by the insured," must be given a fair and reasonable interpretation in accordance with the purpose on which the provision is based. Evidently, the provision was designed to protect the insurer against the moral hazard of overinsurance brought about by the insured, or by another for his benefit and with his knowledge and consent. We do not believe that the provision can be given the effect of classifying the protection given an employee under the Workmen's Compensation Law, as an insurance carried by the employee as to bring such insurance under the terms of the policy's provision and the manifest purpose of such provision. The employee, under the Workmen's Compensation Law, is merely the recipient of the benefits as provided in the law in consideration of surrendering rights which he may have independent of such law. It cannot be

said that the insurance provided therein is such as was "carried by appellee," as is the case of the $1,000 insurance carried by the insured with the Travelers Insurance Company. In recognition of appellant's rights under the provision of its policy, the trial court prorated the indemnity promised with that carried with the Travelers Insurance Company, and we approve the holding; and, we also approve the holding of the trial court that the compensation insurance carried by appellee's employer does not come under the provision.

Under the facts and terms of the policy, we are of the opinion that appellee's claim must be modified from classification "D," carrying an indemnity of $80 per month, to "X," carrying a monthly indemnity of $38.61 for the unpaid period of eighteen months, prorated as such indemnity bears to the total amount thereof and the $1,000 indemnity carried with the Travelers Insurance Company, with an allowance of $30.63 on return premiums, prorated for the indemnity thus determined. Accordingly, calculating on this basis, the judgment of the lower court is reformed, allowing appellee judgment against appellant for the sum of $284.96, as indemnities due under the policy for the unpaid period of eighteen months, and the further sum of $47, as accrued interest to the date of the judgment of the lower court; $39.88 as penalty; $30.63 as return premiums; and $328 as attorney's fee, aggregating the sum of $730.47, and, as reformed, the judgment of the lower court is affirmed. All cost on appeal is taxed against appellee.

Reformed and, as reformed, affirmed.