DORE, Judge.
In our original opinion, reported in 49 So.2d 513, we set out the issues involved in this case, namely, (1) whether the plaintiff is permanently and totally or partially disabled as a result of the accident, and (2) whether the Louisiana Insurance Code, Act 195 of 1948, Section 14.48,' LSA-RS 22:-658 applies to compensation insurance and, if so, whether penalties provided therein should be imposed.
• In said original opinion, we set out the facts as found by us and came to the conclusion that although plaintiff was totally and permanently disabled to operate an asphalt distributor, he was nevertheless capable of. operating an automobile or a *598 truck, and that if his duties consisted of only the operation of a truck, there would be no impairment or disability. We further concluded that the duties of an operator of an asphalt distributor were those of a laborer rather than of a skilled employee and, following the holding in the case of Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739, held the plaintiff to have been partially, rather than totally, disabled.
After a careful review of the record we do not find wherein our original holding is erroneous. However, plaintiff contends that we erred in failing to realize and hold “that plaintiff was a trained and skilled mechanic who was doing highly skilled, hard, manual labor at the time of the accident.” In answer to his contention, we say that we did consider the standing of the plaintiff but failed to come to the conclusion that he “was a trained and skilled mechanic who was doing highly skilled, hard, manual labor at the time of the accident.” In justification of our holding, it may be proper to repeat and give in fuller details some part of the evidence which we find with regard to plaintiff’s classification.
According to plaintiff, he quit school after reaching the eleventh grade, in 1940, and went to work as a magazine salesman for about four or five months, and then went into the C. C. C. Forestry Division in Boise, Idaho, remaining in the C. C. C. Camp for about six months, where he was employed in the blacksmith shop. Upon being discharged from the C. C. C. Camp, he worked for a construction company whose offices were at Boise but whose job was out of Mount Home. His work was on a wench. We gather from his testimony that his tenure of employment with the construction company was not for long in that he left Idaho in November and came to Yazoo City, Miss., and remained there until he was drafted in February. While in Yazoo City, he worked as a “soda Water Jerker.” After being drafted, he went into the Air Corps; there he went to school as an airplane mechanic and graduated as an Air Corps Mechanic. We do not have any testimony as to how extensive his experience was as an Air Corps mechanic, nor as to what his duties were. However, upon his discharge from the Air Corps, he was employed at the Railway Express Agency in Monroe in the delivery of freight for about three months, thereafter working part-time. He quit that work and was employed by RB. Tyler, a contractor, in Tallulah, La., as-a truck driver, at 75⅞⅞ per hour. He worked,, as a truck driver, on a job below New Orleans and then on a job at Slidell. At Slidell, he was changed from truck driver to helper on the asphalt distributor. He does not testify as to the length of time that he was employed as an asphalt distributor helper nor as to his duties. It appears that his superior, or a friend, a Mr. Raymond Kanier, an employee of Tyler, obtained a better offer from T. L. James Construction. Company. When an opening occurred with James Construction Company, plaintiff was employed by James Construction Company as the asphalt distributor operator and had been so working for about six months when the accident occurred.
From his testimony, we gather that at the time of the accident, plaintiff had had only about six months’ experience as a distributor. It is also noted that, outside of his service in the Air Force, plaintiff has not followed the occupation of a mechanic. It is reasonable to state that he had no intention of following the trade of a mechanic. In fact while working for James Construction Co., plaintiff did not follow the occupation of a mechanic except in a meagre way. He describes his duties as a distributor operator to be: “to see that the machine was kept clean and in good repair and operation of the machine required not only driving but also raising and lowering of the spreader bar which is about four (4) to six (6) feet long and operation of the spreading machine and pump and also more or less general duties as booster operator. It is a device consisting of heavy output pump and kerosene' heater with two (2) hoses, one at the top and one at the bottom. Operation of this machine consists of fastening and unfastening of the hoses and also repairs on the machine”. Thus from this statement, it is apparent that expert knowledge was not essential. It can be said that such duties can be performed by a common laborer, the statement that the distributor was to be kept in “good *599 repair” notwithstanding. There is no evidence in the record justifying the conclusion that to keep the distributor in “good repair” required expert mechanical knowledge.
It is contended by plaintiff’s attorney that the differential in wages clearly demonstrate that there is a wide difference in the operation of a truck and the distributor. We are not so impressed. The distributor is composed of two parts: the distributor proper and the tractor pulling it, plus the booster. We gather that the operator must possess more strength than a truck driver. It is on account of this lack of strength that we held plaintiff to be permanently and totally disabled to be a distributor operator and not on account of his inability to perform other duties such as attending to the booster and broom or to drive the truck part of the unit. According to plaintiff, his duties were interchangeable.
We repeat that the evidence does not justify the conclusion that through training (he has had very little) and experience (his experience not being over six months) he was a “highly” trained and skilled mechanic and operator of an asphalt distributor.
In reconsidering our original opinion we do find an error (which error was not called to our attention by either litigant) and that is in our decree. We find that the date from which compensation should start is January 6, 1947, the date of the accident, instead of August 26, 1947. Furthermore, according to the evidence, plaintiff was totally incapacitated from the date of the accident to the latter part of March or first part of April, 1948 when he started working as a candy salesman. The defendant paid him compensation from January 6, 1947 to April 6, 1948 or a period of 66 weeks. He is entitled to full compensation for that period and to compensation for an additional period not exceeeding 234 weeks at the rate of $17.51. Our former decree will be recast accordingly.
The remaining question concerns penalties and attorney fees. In our original opinion we held that even if the Insurance Code applied to Workmen’s Compensation no penalties or attorney fees were due here for the reason that defendant had good reason for refusing to pay plaintiff’s claim. The applicable part of the Insurance Code, upon which plaintiff relies, is found in LSA-RS 22:658, which reads as follows:
“Payment of claims; policies other than life and health and accident; penalties
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 above shall pay the amount of any claim due any insured within sixty days after receipt of satisfactory proofs of loss from the insured or any party in interest. Failure to make such payment within -sixty days after receipt of such proofs and demand therefor when -such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twelve per cent -damages on the total amount of the loss, payable to the insured, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender ha-s been made twelve per cent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be twenty-five per cent -and all reasonable attorney’s fees.” (Emphasis ours.)
At the outset it will be noted that this statute is penal in nature and as such requires strict interpretation. We are impressed, first of all, with the language of the statute, which makes the penalties, payable to the insured. We seriously doubt that an employee coming within the terms of the Workmen’s Compensation Statute is an insured within the meaning of the above quoted section of our Insurance Code.
Counsel for plaintiff points to the cases of Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434 and Suire v. Union Sulphur Co., La.App., 155 So. 517 wherein the respective courts in classifying work *600 men’s compensation likened it unto insurance against loss of earning capacity as opposed to damages for injuries. While such may be the nature of compensation itself, we do not believe that these cases are authority for holding an employee to be an insured within the meaning of LSA-RS 22:658.
Counsel for plaintiff, however, in contending that an employee is an insured within the meaning of the compensation act as authority therefor cites further LSA-RS 23:1162, reading as follows:
“Contents of insurance contract; enforcement by employee; subrogation of insurer
“No policy of insurance against liability arising under this Chapter shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation all installments of the compensation that may be awarded or agreed upon, and that this obligation shall not be affected by any default of the insured after the injury, or by any default in the giving of any notice required by such policy, or otherwise. This agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name. No policy of insurance against liability under this Chapter shall be made unless the policy covers the entire liability of the employer; provided, that as to the question of the liability as between the employer and the insurer the terms of the insurance contract' shall govern.
“When an employer is engaged in more than one business for the purpose of insurance against his liability, under this Chapter, each separate and distinct business may be covered by separate policies.
“All policies insuring the payment of compensation must contain a clause to the effect that as between the employee and the insurer, the notice of the insured or the knowledge of the occurrence of the -injury on the part of the insured, shall be deemed to be notice or knowledge on the part of the insurer, as the .case may be.
“The insurer shall be subrogated to all rights and actions which the employer is entitled to under this Chapter.” (Emphasis ours.)
We think that even though the above quoted statute recognizes an obligation by the insurer in favor of the employee, that it does not classify the employee as an insured. In fact, the very opposite appears to be intended for in the italicized portion of the third paragraph thereof the statute recognizes the rights and obligations of three sets of parties' — the employee, the insured, and the insurer, and nothing therein would indicate that the employee and insured are one and the same.
The Workmen’s Compensation Law of Louisiana is a. special statute which we do not think has been modified by the general provisions of our Insurance Code. We conclude, therefore, that an employee is not an insured within the penal provisions of the Insurance -Code and that in a case of this sort neither penalties nor attorney’s fees are due.
For these reasons and the reasons given in our original opinion, our former decree-, is recast so as to read as follows:
It is ordered that the judgment appealed: from be annulled, reversed and set aside,, and accordingly it is now ordered, adjudged; and decreed that there be judgment in favor of the plaintiff, Rayford J. Wright, and' against the defendants, National Surety- . Corporation and T. L. James Construction, Company in the full and just sum of $20: per week from January 6, 1947 to, April 6,. 1948, a period of 66 weeks, which compensation has been fully paid by defendants,, and in the sum of $17.15 per week from, April 6, 1948 for a period not exceeding 234 weeks, with legal interest on each payment from maturity until paid.
It is further ordered that the fee of Dr. Aswell be charged as costs and that all costs be paid by the defendants, T. L. James Construction Company and National Surety Corporation.
As thus recast, our former opinion stands as the final opinion of this court.