For the reasons assigned, the judgment appealed from is affirmed.

HAMITER, J., concurs in the decree.

**59 So.2d 695**

**WRIGHT v. NATIONAL SURETY CORP. et al.**

**No. 40415.**

April 28, 1952.

Rehearing Denied June 2, 1952.

Dubuisson & Dubuisson, Opelousas, for applicant.

Alvin R. Christovich, Christovich & Kearney, New Orleans, Huckabay, Seale, Kelton & Hayes, Baton Rouge, Marian Mayer, Deutsch, Kerrigan & Stiles, New Orleans, amici curiae.

A. V. Pavy, Opelousas, for respondents.

McCALEB, Justice.

This is a suit for compensation brought under Paragraph 2 of LSA–R.S. 23:1221 (formerly Paragraph B of Subsection 1 of

Section 8 of the Employer's Liability Act, Act No. 20 of 1914, as variously amended) for an injury alleged to have produced permanent total disability to do work of any reasonable character.

The facts of the case are not seriously disputed and we find them to be as follows:

On January 6, 1947, plaintiff had been employed for about six months by T. L. James Construction Company as the operator of a truck and asphalt distributor, earning about $66 per week. On that date, he fractured his right arm in an accident arising out of and in the course of his employment. Several weeks after his broken arm had been set, he re-injured it as the consequence of a fall in the bathroom. This necessitated several operations and, as a final result, there is a definite limitation (about 60%) of supination and pronation in the member. In addition, the grip of his right hand is somewhat weakened. These disabilities are permanent and, as a consequence, plaintiff can no longer perform the duties required of him as operator of an asphalt mixer or distributor. However, the impairment of the arm does not prevent him from driving an automobile or a light truck and, for a period of time since his convalescence, plaintiff was employed as a candy salesman and operated a small truck in connection with his duties. At the time suit was filed, he was engaged in the restaurant business.

It is the contention of the plaintiff that, since he can no longer perform the work required of an operator of an asphalt machine or any other similar pursuit demanding comparable skill and strength, he is totally, permanently disabled from doing work of any reasonable character and therefore entitled to compensation on that basis. He further claims that the defendant insurer discontinued payments of compensation arbitrarily and without just cause and that, therefore, it is liable for penalties and attorneys fees provided for by LSA–R.S. 22:658 (formerly Section 14:48 of the Insurance Code, Act 195 of 1948).

On the other hand, the defendant employer and its compensation insurer take the position that plaintiff was a manual laborer and that, inasmuch as he can now drive a truck or automobile, he has not sustained a compensable disability, despite the fact that there is a 60% impairment of the pronation of the injured arm.

After a trial in the district court, there was judgment in favor of plaintiff for compensation not to exceed 400 weeks, subject to certain credits, together with penalties of 12% of all compensation payments due at the date of the rendition of judgment, and attorneys fees in the sum of $750.

On appeal, the Court of Appeal reached the conclusion that plaintiff's disability was not total, but partial, and rendered judgment in his favor for compensation at the rate of $17.51 per week from August 26, 1947, for a period not to exceed 300 weeks, subject to a credit of $1,320 for compensation paid. Recovery of penalties and attor-

neys fees was denied. See La.App., 49 So. 2d 513. On rehearing, with one of the judges dissenting, the court reinstated its first decree with certain minor changes, not important here. See La.App., 52 So.2d 597. We granted certiorari.

On substantially the same finding of fact respecting plaintiff's injuries and disability which we have set forth above, the Court of Appeal reasoned that plaintiff was not permanently totally disabled ·within the meaning of the Employer's Liability Act because he was not really a skilled mechanic, but merely a laborer, as it took no special skill or knowledge to operate the asphalt distributor attached to the truck. Accordingly, the court decreed that, since plaintiff is still able to operate an automobile or truck, he is not wholly disabled to do work of any reasonable character. In support of this ruling, dependence was placed on our recent decision in Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739.

We think the Court of Appeal was in error in resolving that the work plaintiff was performing at the time of the accident was unskilled manual labor, and also in holding that the case was similar to Morgan v. American Bitumuls Co. In that matter, the plaintiff, a common laborer, sustained a shoulder injury which lessened, by approximately 20%, his ability to perform his customary work. However, it was disclosed that the employee had been doing cleaning and pressing work (which the Court of Appeal had evidently found ·to be manual labor) and it was therefore concluded that the disability was partial and not complete as the plaintiff was able to do work similar to the labor in which he was engaged when he was injured.

But that case bears little resemblance to this matter on the facts. The question here, as in all these cases, is whether plaintiff is "disabled to do work of any reasonable character" within the intendment of the compensation statute—that is, as was stated in the Morgan case, "disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred." See, also, the long list of authorities cited in that opinion.

The facts of this case require an affirmative answer. Initially, it strikes us as self-evident that the operator of an asphalt distributor, which is a large mechanical device used in surfacing blacktop roads, is to be regarded as a skilled laborer.[1]

1. Plaintiff testified (and he is uncontradicted) that it was his duty to see that the machine was kept clean and in good repair; that its operation required not only driving, but also raising and lowering the spreader bar, which is about four to six feet long, the operation of the spreader machine and pump, and that he was also required to operate the booster, which is a device consisting of a heavy output pump and kerosene heater with two hoses, one at top and one at bottom.

Albeit, we would hesitate to conclude, in the absence of authoritative opinion to the contrary, that an ordinary truck driver occupies the status of common laborer. But be this as it may, the question for decision is whether plaintiff can do work of a reasonable character. It is, of course, conceded that he cannot do the same work, but it is said, since he is able to drive an automobile or small truck, he is not totally disabled because driving a motor vehicle is of the same character as operating an asphalt distributor.

We fail to discern the analogy. The fact that plaintiff is able to operate an automobile or light truck furnishes no just criterion on which the extent of his disability must rest—for it can hardly be seriously believed that this type of driving is of a similar character to his previous employment. Verily, it is exceedingly doubtful that plaintiff, due to the impairment of his right arm and hand, could obtain work as the driver of a large van, truck, or other heavy and cumbersome vehicle. Were it otherwise, there might be some basis for argument that such type of truck operation was similar to the work in which he had been previously engaged and for which he was suited by training and experience. But here it is evident that plaintiff can no longer do heavy, laborious work.

Plaintiff's wages were $1.25 an hour and he testified that driving was a secondary part of his operation, if the truck was driven on the job; that, in addition to

Since we find that plaintiff is totally permanently disabled within the meaning of the Employer's Liability Act, we pass on to the question of whether penalties and attorneys fees are to be assessed against the compensation insurer under LSA–R.S. 22:658. The pertinent part of that statute provides:

"All insurers issuing *any type of contract* other than those specified in R.S. 22:656 and 22:657 above shall pay the amount of any claim due any *insured* within sixty days after receipt of satisfactory proofs of loss *from the insured or any party in interest.* Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twelve per cent damages on the total amount of the loss, payable to the *insured,* together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made twelve per cent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution

other things, he was required to take down all parts used in the operation of spreading asphalt, clean them and put them back together.

and collection of such amount. * * " (Italics ours.)

LSA–R.S. 22:656 and 22:657, which are excepted from the foregoing provisions, prescribe specific penalties against insurers for failure to pay, without just cause, claims on life, health, and accident insurance policies. It is the contention of counsel for plaintiff that, since the statute covers, by its unequivocal letter, all other types of insurance, the penalites are due in this case inasmuch as the action of the insurance company in discontinuing all compensation after April 6, 1948, was arbitrary and capricious in view of the fact that it was well aware plaintiff was suffering a serious impairment of the function of his right arm and wrist.

The only defense of the insurance company, according to its pleadings and the brief of its counsel both here and in the Court of Appeal, is that it was fully justified in refusing to pay further compensation after April 18, 1948. However, no evidence was offered to support this position, and no effort was ever made to explain the summary stoppage of all compensation payments despite the unanimous medical testimony showing that the insurer was well aware at that time that plaintiff was still partially, if not totally, disabled. Obviously, the discontinuance was indefensible.

On rehearing, the Court of Appeal considered in detail the claim for penalties and attorneys fees and concluded that they were not assessable because, by strict construction of LSA–R.S. 22:658, plaintiff is not to be regarded as the "insured" to whom payment of the insurance is due. This, to our minds, is the only debatable question respecting the claim as it is clear that the penalty provision of LSA–R.S. 22:658 applies to workmen's compensation policies just as it does to all other forms of insurance, other than the particular classes specifically excepted.[2]

2. LSA–R.S. 22:658 is remedial in nature even though it imposes penalties. Supreme Ruling of the Fraternal Mystic Circle v. Snyder, 227 U.S. 497, 33 S.Ct. 292, 57 L.Ed. 611. Therefore, it is applicable to policies issued prior to its enactment and to liability for insurance incurred thereunder before its effective date when the payments due are arbitrarily withheld for more than 60 days thereafter. Statutes of this kind have been held invulnerable to charges that they are violative of the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution and that they impair the obligation of contracts. See, Supreme Ruling of the Fraternal Mystic Circle v. Snyder, supra; Life & Casualty Ins. Co. v. McCray, 291 U.S. 566, 54 S.Ct. 482, 78 L. Ed. 987, and annotation "Constitutionality of statutes providing for additional liability or penalty for failure or delay by insurance company in paying claims," in 78 L.Ed. 993–998. Compare, Central Glass Co. v. Niagara Fire Ins. Co., 131 La. 513, 59 So. 972, overruling Monteleone v. Seaboard Fire & Marine Insurance Co., 126 La. 807, 52 So. 1032, and holding Section 3 of Act 168 of 1908 (pro-

In determining whether employees are the insureds under policies insuring liability for workmen's compensation, it is appropriate to examine the Employer's Liability Act. LSA–R.S. 23:1162 provides in part:

"No policy of insurance against liability arising under this Chapter shall be issued unless it contains the agreement of the insurer that it will *promptly pay to the person entitled to compensation* all installments of the compensation that may be awarded or agreed upon, and that this *obligation* shall not be affected by any default of the insured after the injury, or by any default in the giving of any notice required by such policy, or otherwise. *This agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name.* No policy of insurance against liability under this Chapter shall be made unless the policy covers the entire liability of the employer; provided, that as to the question of the liability as between the employer and the insurer the terms of the insurance contract shall govern." (Italics ours.)

 It is seen that the statute, which is written into the policy, makes it the direct obligation of the insurer to pay the injured employee. Thus, the employee is constituted, for all intents and purposes, the insured under the policy. The fact that LSA–R.S. 22:658, as a penalty statute, is subject to strict construction, does not necessitate an interpretation which leads to consequences plainly unintended by the lawmaker. A reading of the statute reveals a clear intent and purpose to penalize the arbitrary refusal of insurers to pay just claims after 60 days notice of the loss. Manifestly, in workmen's compensation cases, the loss is sustained by the employee and the obligation imposed on the insurer by the Employer's Liability Act (LSA–R.S. 23:1162) is directly in favor of such employee; it is to him that the claim is payable. To hold otherwise, would require that we blind our eyes to obvious realities and render impotent the provisions of R.S. 22:658 in so far as workmen's compensation policies are concerned. This we will not do.

The judgment of the Court of Appeal is annulled and set aside and it is now ordered that there be judgment herein in favor of the plaintiff, Rayford J. Wright, and against the defendants, National Surety Corporation and T. L. James Construction Company, for compensation in the sum of $20.00 per week from January 6, 1947, for a period not exceeding 400 weeks, with legal

viding for payment of losses within 60 days after receipt of proofs under penalty of 12% damages) would unconstitutionally impair the obligation of contracts if applied to policies written before its passage. Also, compare Central Glass Co. v. Hamburg-Bremen Fire Ins. Co., 133 La. 598, 63 So. 236, distinguishing Supreme Ruling of Fraternal Mystic Circle v. Snyder, supra.

interest on each overdue payment from its due date until paid, subject, however, to a credit for compensation paid in the sum of $1,320. It is further ordered that a penalty of 12% on all weekly compensation payments which are now due, be and it is assessed against National Surety Corporation, with a like penalty on all such payments which might become 60 days overdue in the future, together with an attorney's fee payable to the plaintiff in the sum of $750. All costs are to be paid by the defendants.

LE BLANC, Justice (concurring in part and dissenting in part).

I am in accord with the holding in the majority opinion that the plaintiff in this case is entitled to recover as for total permanent disability but not with the holding that he is entitled to recover the penalty and the attorney's fees provided for in the Insurance Code, LSA–R.S. 22:658.

I am of the opinion that the statute referred to intended to include any type of insurance issued under some form of contract between an insurer and an insured and not to a form of Workmen's Compensation Insurance which results solely from statutory enactment. The Workmen's Compensation Law is a law that is distinct in itself and actions brought under it are not governed by the ordinary forms and rules of other actions. The obligations arising under it as well as the benefits that are secured by it are purely statutory and I seriously doubt that an injured employee who is entitled to receive the benefits therein provided for can be classified as an *insured* in a policy issued under its terms and can recover, as such the penalties and the attorney's fees imposed by LSA–R.S. 22:658. This latter statute being penal in its nature, has to be strictly construed and, considering the doubt which I have just expressed, I do not believe that its provisions should be applied in Workmen's Compensation cases.

As pointed out in the opinion of the Court of Appeal in this case, 52 So.2d 597, whenever the employer avails himself of the right that is given to him under the Workmen's Compensation Law to take out insurance, the rights and obligations of three different parties are involved. This thought seems to be emphasized by the Court of Civil Appeals of Texas in the case of Inter-Ocean Casualty Co. v. Lenear, 95 S.W.2d 1355, 1358, wherein it is stated: "In passing, it might be said that the Workmen's Compensation Law is a tripartite arrangement, consisting of an agreement of the employer, employee, and the insurer, in consummation of which the employer makes the arrangements with and pays the premiums to the insurer without consulting the employee. When the insurance is thus procured, it is, in effect, as between the employer and the employee, a promise on the part of the employee to surrender all common-law rights of action for damages growing out of an accident in the course of his employment, and by the employer to

forego all such defenses which he might have in defense of such action. The insurance serves the means of protecting both the employer and employee. While such insurance may be considered an indemnity in the sense that the insurer promises to pay the employee on contingencies, but, in reality, it is a protective arrangement sanctioned by law for the mutual benefit of the employer and the employee. It is not an insurance as contemplated within the terms of appellant's policy provision."

The policy provision referred to by the court was one concerning the prorating of losses among two or more insurance companies and the appellant company was seeking to have the Workmen's Compensation insurance included within the provisions of that clause. On this point the court further stated: "We do not believe that the provision can be given the effect of classifying the protection given an employee under the Workmen's Compensation Law, as an insurance carried by the employee as to bring such insurance under the terms of the policy's provision and the manifest purpose of such provision. The employee, under the Workmen's Compensation Law, is merely the recipient of the benefits as provided in the law in consideration of surrendering rights which he may have independent of such law."

I think that the holding in this case is pertinent to the thought I have that the employee is not an insured within the contemplation of that word as it is used in R.S. 22:658; and, it would seem to follow from this, that the form of insurance carried by the employer under the Workmen's Compensation Law is not that *type of contract* contemplated under the statute to bring a violation of its provisions within its terms. I believe that its provisions apply to all forms of insurance which arise out of contract between individuals and not to Workmen's Compensation Insurance which is governed strictly by the Workmen's Compensation Law.

For these reasons I respectfully dissent from that part of the opinion and decree which awarded the penalties and the attorney's fees in this case.

HAMITER, Justice (concurring in part and dissenting in part).

Under the facts and circumstances of this case plaintiff, I agree, is entitled to compensation as for total and permanent disability.

But I do not agree with the holding that the defendant insurance company is liable to plaintiff for the penalties and attorney's fees provided for in LSA–R.S. 22:658. In my opinion these statutory provisions, penal in nature and subject to strict construction, are not intended for the benefit of an injured employee. Thereunder, an insurer is penalized in the event of a failure to pay the amount of any claim due to any *insured* within 60 days when such failure is found to be arbitrary, capricious or without

probable cause. And according to the Employer's Liability Act (LSA–R.S. 23:1162), the insured in a policy insuring the payment of compensation is the employer, not the employee.