McBRIDE, Judge.
This is a suit brought by plaintiff, George Bickman, by original and supplemental and amended petition against his former employer, Lester J. Danner, Inc., and Liberty Mutual Insurance Company, its workmen’s compensation liability insurer, to recover compensation for permanent total disability under paragraph 2 of LSA-R.S. 23:1221 for an injury which plaintiff contends produced permanent total disability to do work of any reasonable character. He claims compensation at the rate of $30 per week for a period of 400 weeks, beginning on or about March 19, 1954, less a credit of $900 for compensation for 30 weeks at the rate of $30 per week already paid, plus interest, costs, attorney’s fees and penalties in accordance with LSA-R.S. 22:658. In a supplemental petition plaintiff alleges that as a result of the accident he lost a portion of the distal phalanx of the thumb, the first and second phalanges of the index finger, the first phalanx and a portion of the second phalanx of theffhird finger and the tip of -the ring1 finger, all of the left hand, and that the stumps of the fingers' and thumb are sensitive and painful and because of this; and additionally because he is afraid to return to operating1 power saws, he is totally and permanently disabled from returning to the type of work he was doing at the time of the accident.
Lester J. Danner, Inc., is engaged in the business of packaging various machinery and other materials for export shipment. Plaintiff’s occupational duties involved unloading shipments received from boxcars, packaging freight in boxes, nailing up the boxes in which the freight is packed, disassembling machinery for packaging, cleaning up around the premises, etc. During the week of February 9, 1954, approximately one month prior to the accident out of which this suit arises, plaintiff was instructed in the use of an electrically-powered ripsaw and crosscut saw and he was sometimes called upon when the regular sawyer of the employer had too much work to handle himself to cut lumber to be used in making crates or boxes. On March 8, 1954, while operating the ripsaw, plaintiff permitted his hand to come in contact with the whirling saw blade causing injuries resulting in the amputations set forth in the supplemental petition. It appears from the evidence that the tip of plaintiff’s left thumb was also injured. Plaintiff was hospitalized for a few days and was under treatment by Dr. M. D. Paine, the insurer’s physician, almost daily through May 18, 1954, on which date Dr. Paine came to the conclusion that plaintiff was about ready to return to his job although he did not discharge him. Instead plaintiff was sent to see Dr. D. C. Riordan, an orthopedic specialist also employed by the insurer, who made an examination on May 27 and reported to the defendant insurance company that plaintiff had suffered a 20 per cent permanent disability of the left hand but, notwithstanding this, he thought he should be able to return to the same type of work that he was doing when injured. The plaintiff made no attempt to return to his employment. Plaintiff was paid compensation benefits (based on Dr. *566 Riordan’s estimation that he had suffered a 20 per cent disability of the left hand) under LSA-R.S. 23:1221(4) (e, o). The payments aggregated $900 over a period of 30 weeks at $30 per week or until about October 8, 1954. This suit was instituted just a few days later.
The defendants admit the occurrence of the accident, the injuries to plaintiff’s left hand, the rate of pay, and the insurance coverage. The defense is that despite his injuries the plaintiff is fully competent to return to his former occupation and that the only compensation to which he is entitled is the 30 weeks which represented the 20 per cent loss of the hand, which has been paid in full.
About March 28, 1955, the defendants became apprised that Bickham had developed a painful neuroma on the end of the stump of the amputated middle finger and examinations made by Drs'. Paine and Rufus All-dredge confirmed the fact of the existence of a painful neuroma. The doctors, however, were of the opinion that this condition could be easily remedied and eliminated by a surgical procedure, which they termed minor, under local anesthetic. The defendants thereupon filed a supplemental and amended answer tendering to plaintiff an operation by a qualified orthopedic surgeon of his own selection and praying that in the event of his failure to submit to such surgery that the defendants be relieved from the payment of compensation benefits beyond the estimated period of convalescence. The plaintiff refused to submit to the surgery suggested.
After a trial on the merits on the issues presented by the pleadings, the judge a quo was of the opinion that plaintiff’s attitude in refusing to submit to the surgery was neither unreasonable nor arbitrary. The judge was of the further opinion that the plaintiff was but a common laborer who was only partially disabled and he .gave judgment in plaintiff’s favor for 65 per cent of the difference between $50 per week, which he earned with Lester J. Danner, Inc., and $33 per week,-his present wage as a porter for Mayer Israel’s Department Store in New Orleans, or the sum of $11.05 per week for a period of 270 weeks (credit being given for 30 weeks’ compensation previously paid). The expert witnesses’ fees of plaintiff’s three medical experts were fixed at the sum of $100 each and taxed as costs. The appeal, was answer.ed and appellee prays that he be declared totally and permanently disabled from doing work of any reasonable character and that the compensation be fixed accordingly, with penalties including a 20 per cent attorney’s fee .and an increase in the allowance of the expert witnesses’ fees and $1,000 for medical expenses.
It is unnecessary to pass on the trial judge’s ruling as to plaintiff’s refusal to submit himself to the surgery tendered, because we do- not believe that the suggested surgical procedure could ameliorate plaintiff’s condition to such an extent. that he would have the' capacity to return to the duties of his employment with Lester J. Danner, Inc. We. think that the injury, even without the painful neuroma, leaves him absolutely incapable of returning to the occupational duties. Of course, as is to be expected, whether plaintiff would be capable of returning to work after an operation is a question on which there is a diversity of opinion amongst the medical experts, but we are impressed by the testimony of plaintiff’s expert, Dr. Homer D. Kirgis, a neurosurgeon who is connected .with the Ochsner Clinic, whose opinion was that Bickham. is unable to return to his former occupation because of the loss of strength in the left hand which would create inability to feed lumber carefully into the electrical saws or to grasp objects easily and quickly. The saw which injured Bickham is a stationary table-type ripsaw with a 16r inch blade operated electrically, and Mr. Lester :J. Danner, testifying on behalf of the defendants, made it clear that the operator must exercise extreme caution, otherwise his fingers might come in contact with the teeth of the saw.' Andrew Hartley, a former employee of Lester J. Danner, Inc., .who operated'the "same electrical saws for *567 more than two years, testified .■ that the sawyer must hold the wood as it is passed to the saw. fast to the platform so that it will not be caused to “kick up” and “buck” out of line by the violent motion of the saw, and that for this reason constant downward pressure must be kept on the board with' the tips of the thumbs and the fingers. Pictures of the saws in action reflect that skill and co-ordination of the eyes as, well as the hands and arms are necessary in the operation. We believe that to expect a workman handicapped to such an extent as Bickham to labor on the saws would be asking quite too much. For first and foremost it appears certain that Bickham’s return to the work would be-’fraught with danger as possibly, if not probably, he will suffer more extensive injuries. It is conceded by all of the physicians that Bickham has sustained a 20 to 25 per cent loss of the use of his left hand and there is uncontra-dicted evidence showing that his grip of the left hand measures only 70 pounds as compared with a normal 250-pound grip in the right hand. In addition to his duties as a sawyer, Bickham was called upon to lift various objects such as plows, automobile parts, pieces of metal weighing up to 200 pounds or more, etc., and that plaintiff stated that the use of both hands is required. Mr. Danner testified that when his company shipped tractors and automobiles they were usually
“ * * * sent to us as they come off the assembly line and set up, and in order to conserve cube we have to dismantle and pack them in the smallest container possible. The boys in the shop, including Bickham, help in that dismantling operation. That was like removing the wheels from tractors and the fenders and taking off the bolts dropping the undercarriage, and on automobiles we normally just remove the wheels, but we had one particular shipment where we had to dismantle them entirely. We took the bodies off the chassis and the motors and wheels and packed the bodies in one type box and the chassis and motors in separate box-
■ In an attempt to demonstrate that a person having a handicap similar to Bickman’s would be able to operate electrical saws, defendants produced as a witness John W. Werling, the proprietor of a small woodworking shop, who testified that he is able to operate electrical power machines such as ripsaws, cutoff saws, bandsaws, and joiners, notwithstanding that he had lost all of the fingers of one of his hands, except the thumb, in an accident which befell him .some time ago. The witness conceded, however, that it was most difficult to overcome the handicap and that only with the greatest of difficulty did he force himself to attempt the resumption of his duties. While we express the greatest admiration for Mr. Werling’s fortitude, we do not believe that any court would say that the witness has the same competency now that he had prior to the injuries to his hand. If the equipment that Mr. Werling says he is able to operate is of the same type as Bickham would be called upon to operate in the event of re-entering his former occupation, we refuse to believe that Mr. Werling can possibly carry on his duties with the same amount of competence and without an increase in the normal hazards of his occupation not only to himself but to others as well.
The nature of Bickham’s employment called not only for the operation of the electrically driven saws but also for the utilization of various tools, such as wrenches, in connection with the disassembling of tractors and automotive equipment. Mr. Dan-ner pointed out that on occasions it was necessary to entirely disassemble the bodies of the tractors or automobiles and to pack the various parts for shipment in separate boxes. Our firm opinion is that the permanent injuries to Bickham’s hand would inhibit his carrying out these particular functions of his former occupation.
Our brother below classified Bickham as a common laborer, but we believe that he was in error in resolving that the work plaintiff was performing at the time of the accident was unskilled manual labor. It strikes us forcibly that plaintiff’s status is on a much higher plane than an employee *568 who performs ordinary manual labor for the reason ■ that it seems self-evident that one who is called upon to dismantle tractors and automotive equipment by the use of hand tools must possess some reasonable amount of skill.
In the recent case of Fruge v. Pacific Employers Ins. Co., La.App., 71 So.2d 625, 634, decided by our brothers of the First Circuit (writs refused except to review the assessment of penalties—226 La. 530, 76 So.2d 719), it was held that an oil well roughneck, a member of a drilling crew, was a skilled workman. In setting out the duties performed by the plaintiff in the cited case the court mentioned that among his duties was the using of various tools on the drilling rig, including wrenches to screw the joints of pipes together, and said:
“* * * Taking these duties as a whole we are unable to agree with the trial judge’s conclusion that this man' was ‘nothing more than a common laborer.’ ”
The fact of the defendant in the Fruge case applying for a writ of certiorari or review and the Supreme Court’s granting of the writ to review the judgment, but only insofar as it assesses penalties and attorney’s fees, had the effect of placing the Court’s - approval on those portions of the judgment which were not reviewed.
We perceive- an analogy between the character of duties performed by the roughneck and the plaintiff in the instant case in that their respective- duties required the use of wrenches and hand tools, and we must hold that the present plaintiff is not merely a common laborer but a skilled workman.
The question here is whether the plaintiff, a skilled workman, is disabled to the extent of not being physically competent to do work of any reasonable character within the meaning and intendment of the Workmen’s Compensation Statute. That is tó say, has he a disability to perform the work of the same or similar description, kind or character to that which he was accustomed to perform or was undertaking when the injury occurred? It may be true that the plaintiff might do some of the duties which - the nature of the employment requires, but it can hardly be said that he is able to do a substantial part of these. We are certain that his major functions were to operate the saws and disassemble the tractors and motor vehicles and we are just as certain that plaintiff, due to the damaged condition of his left hand, cannot perform them. We must, therefore-, find that he is totally and permanently disabled. Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.
Plaintiff is entitled to recover compensation notwithstanding that the evidence shows that he is now in the employ of a department store doing light work as a porter. It is well settled in this state that the disability which prevents an employee skilled in a special trade from carrying on such trade or doing work of a similar character constitutes total disability to do work of any reasonable character even though it appears that the employee subsequently is able to perform the duties attached to other employment not requiring such skill or training. Wright v. National Surety Corp., supra; Ranatza v. Higgins Industries, Inc., 208 La. 198, 23 So.2d 45; Fruge v. Pacific Employers Ins. Co., supra.
The penalties of LSA-R.S. 22:658 should not be assessed against the Liberty Mutual Insurance Company because there was nothing capricious or arbitrary about the refusal to make payment of compensation beyond the thirty weeks or that the withholding of compensation was without probable cause. The evidence convinces us that the compensation insurer acted upon the advice and opinions of two competent and reputable medical experts each of whom thought that the plaintiff, notwithstanding the loss of a 20 to 25 per cent use of his hand, could return to the duties which his employment entailed. These experts on the trial of the case were sincere in stating what their conclusions were and the compensation insurer should not be penalized for basing its conduct on the *569 opinions and findings of the medical experts. When the defendants learned of plaintiff’s neuroma, he was at that time receiving compensation and he continued to be paid compensation for several months thereafter, notwithstanding the refusal to submit to surgery, until thirty weeks were paid which defendants believed was the extent of their legal liability. Plaintiff filed this suit within a few days of the termination of the thirty-week period. LSA-R.S. 22:658, the source of which is Act 417 of 1952, in providing for the penalties in certain cases sets forth that they are due when there is a failure to pay but only “when such failure is found to be arbitrary, capricious, or without probable cause.”
In the answer to the appeal Bick-ham also prays for an allowance of $1,000 for medical expenses, but we see no predicate upon which such allowance should be made. It was not shown at the trial what, if any, medical expenses Bickham incurred in connection with his injuries, and if it was intended that the $1,000 is for medical expenses which plaintiff might be called upon to bear in the future, this would be improper for nowhere in the Workmen’s Compensation Statute is there any provision that an allowance may be made to an injured workman for future medical expenses. Boykin v. We Hope Gas & Oil Co., Inc., La.App., 2 So.2d 528; Rosenquist v. New Amsterdam Casualty Co., La.App., 78 So.2d 225; Wilson v. New Amsterdam Casualty Co., La.App., 86 So.2d 556. In this case the ends of justice would require that plaintiff’s right to assert his claim in the future for whatever amount he may now owe or be called upon in the future to incur be reserved unto him.
We do not see fit to increase the expert witnesses’ fees of the three doctors who testified on behalf of plaintiff. The lower court allowed them $100 each and we think this is just and it is in line with allowances made by us in many previous cases.
Our findings will require that the judgment appealed from be recast.
For the reasons assigned, it is ordered, adjudged and decreed that George Bick-ham, plaintiff, have judgment against the defendants, in solido, for workmen’s compensation at the rate of $30 per week not to exceed 400 weeks commencing March 15, 1954 (less a credit for 30 weeks’ compensation previously paid) with legal interest from judicial demand on all past due installments from the due date until paid and for all costs of this suit; it is further ordered that the fees of plaintiff’s expert witnesses, Dr. David A. Freedman, Dr. Homer D. Kirgis and Dr. Louis J. Gehbauer be and the same are hereby fixed at $100 each and assessed as costs herein; it is also ordered that plaintiff’s right to sue for such medical expenses as may have been incurred by him or which he may be called upon to bear in the future as a result of his injuries be reserved unto him; and as thus recast the judgment appealed from is affirmed at appellants’ cost in this cuort.
Amended and affirmed.