JANVIER, Judge.
This is another of that already multitudinous and ever multiplying horde of work *38 men’s compensation suits in each of which the plaintiff-employee claims to have been permanently and totally disabled, whereas the defendant-employer and the insurer assert that the employee could return to all of the duties of his former employment if he were willing to do so and in which we, with no medical knowledge whatever are asked to reach conclusions on matters on which the medical experts are themselves unable to agree.
The defendant employer and his insurer have appealed devolutively and suspensively from a judgment in favor of the plaintiff employee for compensation based on total permanent disability and in which the employee was also awarded against both the employer and the insurer penalties and attorney’s fees as provided by LSA-R.S. 22:-6S8 where an insurer refuses arbitrarily and capriciously to make payment. The employee was also awarded $410.17 as medical expenses, which it is now conceded had already been paid and should not have been included in the judgment.
The plaintiff, Elmo P. Flanagan, was a painter. He classified himself as “a finish painter — interior decorator.” This is admittedly an occupation requiring skill and experience.
On July 6, 1951, while at work as an employee of Louis Welch, plaintiff fell from a “scaffolding board” which was somewhere between 20 and 45 feet above the ground. He sustained fractures of both bones of the lower left leg and also various contusions, bruises and sprains. He was paid compensation for total disability for 33 weeks and then, as a result of a report made by the attending physician, he was discharged as “able to return to his former occupation,” as of February 21, 1952. He did not return to work for his former employer but did undertake to do painting and did so for several months although he did no climbing on ladders and in fact was required to do only work considerably lighter in character than that which he had formerly done. On August 3, 1952, he filed this suit and in his petition did not definitely allege the extent of his disability nor its probable duration and prayed alternatively for compensation for 400 weeks based on total permanent disability, or for compensation for 300 weeks for total partial disability, or for 175 weeks for specific loss of use of the “lower extremity,” or for 100 weeks covering impairment of physical function.
To this petition defendants filed answer, admitting all of the essential allegations but averring that plaintiff had not been permanently totally disabled and that, at the time of his discharge by the attending physician as of February 21, 1952, he could have returned “to his usual work,” and they further averred that he has returned “to such work as a painter and is presently able to perform said work.” This answer was filed on November 13, 1952. No effort was made on behalf of plaintiff to bring the matter to trial until practically three years later when, on October 4, 1955, there was filed a supplemental petition in which it was alleged that there had been residuals and post-traumatic degenerative changes which included “traumatic arthritis, muscle atrophy,” with “the worsening of his complaints.” In this petition plaintiff abandoned all of the alternative portions of the prayer and prayed only for compensation based on total permanent disability, together with the penalties and attorney’s fees already referred to.
The record shows that, during the three years which followed plaintiff’s discharge by the attending physician, he engaged, with varying success, in several occupations which obviously required the use of the leg which had been injured. He worked for a year as a marine oiler for the California Company in which occupation he was required to work “on eight hour shifts” on a vessel in the Gulf of Mexico. For a short time he worked “as a rough neck” for an “oil drilling outfit”. He says that that was “kind of heavy work.” On two separate occasions for extended periods he was employed as a deck hand on a *39 tug boat for the Coyle Lines and this work required that he jump from barge to barge and from tug to barge, that he tie them together, that he handled “ratches, ropes and cables.” He says that he had quite a bit of trouble with his leg in doing this work, but we are certain that his condition was not so bad as one of his witnesses would have us believe. This witness, a fellow deckhand, said that it was necessary for him to assist Flanagan in going to and from barges and in the performance of most of his other duties. We cannot be persuaded that he could have remained in this employment had he required such assistance from a fellow employee. There can be no doubt that the work on such a tug and on such barges required agility and ability and the operators of such a tug would not retain in that position anyone so severely handicapped as the witness to whom we have referred indicates.
The fact that plaintiff continued for so long to perform the various duties of the several occupations in which he was employed shows conclusively that, as a matter of fact he was not totally disabled. However, he was a skilled employee; he had been required to place ladders and to erect scaffoldings and to work in elevated positions, and it seems from the testimony even of defendant’s medical experts that now he can no longer work from these elevated positions, and that, should he stand for extended periods, he would probably suffer pain sufficiently severe to interfere with his continuing at work.
In view of this we conclude that although, as a matter of fact, plaintiff is not totally disabled, as a matter of law and within the contemplation of our compensation statutes, he is totally disabled. Therefore he is entitled to compensation for total permanent disability, and since it is shown that his prior earnings were sufficient to justify it, he is entitled to $30.00 per week for a period not in excess of 400 weeks, subject of course to credit for the 33 weeks already paid.
When we come to consider the question, of whether there should be assessed the-penalty which is provided by LSA-R.S-22:658, and the liability for attorney’s fees, which is also provided, where an insurer arbitrarily and capriciously fails or refuses to make payment under an insurance policy, we find ourselves in a quandary, for we feel that under the circumstances shown here there was nothing arbitrary or capricious about the failure of the insurer to continue making compensation payments. In the first place, it is evident that plaintiff himself was uncertain as to what his ultimate condition would be. We say this because, in his petition, he made it quite clear that he did not know whether his alleged disability was permanent or temporary, or whether it was total or partial, or whether in fact he had sustained anything more than the impairment of the use of his leg.
We have no doubt that, had the insurer attempted to make compensation payments for partial disability, they would have been refused for, as we have said, plaintiff himself at that time did not know just what his condition was. Furthermore, during that three-year period plaintiff was engaged! in these various occupations, all of which' seem to have required laborious effort on his part.
Yet, when he was discharged as able to return to work, the insurer had the report of the attending physician to the effect that, although with normal activity, the plaintiff would “have a complete return of function of this ankle,” he had “a partial permanent disability of this left ankle of approximately 10%.”
Because of this fact we feel that we are compelled by a recent decision of our Supreme Court to hold that there is liability for the penalty and for a reasonable attorney’s fee.
In Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695, 698, the Supreme Court considered just such a situation and *40 held the insurer liable under the cited section of the Revised Statutes. In that case the Court said that there had been a “stoppage of all conpensation payments despite the unanimous medical testimony showing that the insurer was well aware at that time that plaintiff was still partially, if not totally, disabled. Obviously, the discontinuance was indefensible.”
Here we find that all the medical experts produced by defendants are of the opinion that, although plaintiff could return to his former occupation, there might be pain and he might not be able to do some of the things required by that occupation.
If the rule set forth in the Wright case is to be applied in all cases in which there is some doubt as to the ultimate extent of disability, a most complicated situation may often arise. What we mean is simply this. Let us assume that an employee sustains a broken leg as Flanagan did here, and that he is therefore totally disabled for a period of 33 weeks, as there is no doubt Flanagan was. During that 33 weeks he is paid maximum compensation of $30.00 per week, or a total of $990.00. Let us further assume that at the end of that period of 33 weeks it is found that the employee is partially disabled. He would be entitled to compensation based on the pro rata of disability and for a period of only 300 weeks. This would produce a total amount substantially less than what would have been produced had there been permanent total disability. In such situation the employee would be entitled to the option of selecting either total disability for 33 weeks or partial disability for 300 weeks, whichever would produce the greater amount. He could not demand both. Jackson v. Steel Fabricators, Inc., La.App., 90 So.2d 397; O’Connor v. American Mutual Liability Ins. Co., La.App., 87 So.2d 16.
Therefore, when such a plaintiff is discharged by the attending physician as able to return to work with partial disability, the insurer has no means of determining whether the employee desires to retain the full amount which has been paid for total disability or to claim the amount to which he would be entitled for partial disability. How then can the insurer settle with such an employee until the employee determines just what demand he will make? If he ultimately decides that he would prefer partial disability for 300 weeks it may well be that the amount which has already been paid by the insurer will be substantially more than the employee would have been entitled to for partial disability for 33 weeks. What then should be tendered to the employee?
We repeat that a most confusing situation will often result. However, we feel that we must follow the decision of the Supreme Court in the Wright case.
However, we call attention to the fact that the judgment, insofar as it holds the employer also liable for the penalty and the attorney’s fees, is incorrect. The provision for such does not appear in the compensation laws but appears in the so-called Insurance Code to which we have already referred and the provision does not require that the employer should be held liable for such penalty but only that the insurer should be so liable. This is no doubt a distinction without an important difference, but it should be noted because in any case in which there may not be an insurer, there could be no penalty assessed against the employer alone.
Since it is conceded that the medical bills, amounting to $410 have already been paid, it follows that that item must be eliminated from the judgment.
The judgment appealed from is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of Elmo P. Flanagan, and against the defendants, Louis Welch and Great American Indemnity Company of New. York, jointly and in solido, in the full sum of $30 per week up to the sum of $12,000 for a period not in *41 excess of 400 weeks, subject to a credit of 33 weeks already paid.
It is further ordered, adjudged and decreed that there be judgment in favor of Elmo P. Flanagan and against Great American Indemnity Company of New York for a penalty of 12% on the total amount, together with attorney’s fees of $750.
It is further ordered, adjudged and decreed that the fee of Dr. Edward Hoslam be fixed at the sum of $75 and taxed as costs in this proceeding.
It is further ordered, adjudged and decreed that the said defendants, Louis Welch and Great American Indemnity Company of New York, pay legal interest on each $30 payment from the date on which each such payment becomes due and for all costs.
Amended and Affirmed.
REGAN, J., concurs.