ELLIS, Judge.
Plaintiff, an employee of the Louisiana State Penitentiary at Angola, Louisiana, seeks in this action to recover of his employer’s compensation carrier, Houston Fire and Casualty Insurance Company, workmen’s compensation for total permanent disability due to an accidental injury on or about February 28, 1951, within the course and scope of his employment.
The occurrence of the accident in the course and scope of plaintiff’s employment and the amount of wages earned are not in dispute; nor is the workmen’s compensation coverage by the defendant disputed. The only issues before the court are the existence of a disability and whether or not the defendant is entitled to off-set for wages presently being earned by the plaintiff as a result of his present employment at Louisiana State Penitentiary but in a different capacity.
From a judgment awarding plaintiff compensation at the maximum statutory rate for total permanent disability, beginning with the date of the accident, and denying defendant’s alternative claim for off-set for wages being paid, defendant has prosecuted this appeal.
The record shows that plaintiff suffered fractures of both the tibia and fibula of the *85 right leg about one-third of the way down from his knee. At the time of the injury, plaintiff was performing the duties of a correctional officer, Grade I, and was assigned to duty at the gate of “A” Building. His duties required that he electrically operate the gate and if a malfunction occurred, to manually operate the gate. Also, it was his duty to “shake down” all ingoing and outgoing inmates as well as visitors to the prison on visitor’s day. The “shaking down” procedure required plaintiff to assume a stooping position. The position of Correction Officer Grade I paid $290 per month.
Upon plaintiff’s return to duty at the penitentiary, he was assigned to a job as Laundry Supervisor, in charge of the Laundry and Cleaners at the same salary of a Correctional Officer I. This job required the plaintiff to supervise inmates who are “trustys” and required very little standing.
Defendant’s contention is that plaintiff is not disabled within the intent of the Louisiana Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., based on the expert medical testimony in the record. Plaintiff takes the position that he is disabled within the intendment of the act; that his job as Correctional Officer I was a skilled job, that to perform the aforesaid job he would be required to work in substantial pain, and that he has been forced to accept an unskilled job (storekeeper in charge of the Laundry and Cleaners). Therefore, plaintiff contends that he is entitled to compensation for total permanent disability.
Two medical experts testified on the trial of the matter, Dr. William E. Smith and Dr. Alvin Stander, both orthopedic surgeons. Dr. Stander, the attending physician, testified that he examined plaintiff on February 28, 1959, at the emergency room of the Baton Rouge General Hospital. On the same date he performed an open reduction of the fracture and utilized a fixation with metallic screws. A cast was then applied from the web of the toes to the groin. Plaintiff remained under the care of Dr. Stander until December 8, 1960. On this case Dr. Stander testified that his examination revealed a tenderness over the surgical scar and a minimal of swelling in the right ankle. Dr. Stander was of the opinion that there was a slight residual osteoporosis of the tibia that would cause discomfort, but would correct itself with the normal usage of the extremity.
On February 26, 1960 plaintiff was examined by Dr. William Smith. Dr. Smith testified that plaintiff was making a satisfactory recovery from the injury sustained in February of 1959. Dr. Smith felt that there was some slight limitation of motion at the right ankle, lacking about 15 degrees of plantar flexion as compared to his left side, that might slightly affect his ability to negotiate steps.
Further Dr. Smith felt that there was some evidence of osteoporosis of disuse that would alleviate itself with use. All in all, Dr. Smith estimated a 5% disability of the lower right extremity and slight osteoporosis that could cause some discomfort but would be corrected with normal use.
The other testimony affecting plaintiff’s claim of disability came from the plaintiff himself, and Captain John C. Butler, the Chief Security Officer at the penitentiary. Captain Butler testified that, upon plaintiff’s return to work, he considered him a security risk as a Correctional Officer I. Captain Butler further testified that no particular skill was required as Correctional Officer No. I, but that a man in such a position had to be able to handle prisoners by physical force, if necessary. In conclusion Captain Butler testified that he considered plaintiff a cripple because he walked with a limp.
Plaintiff testified he was not able to perform the work of Correctional Officer I because he considered himself a cripple and was not able to handle the prisoners. He testified that he experienced considerable pain in his leg if he was required to stand *86 on it long and when the weather was cold or rainy.
The only other person who testified in the case was .William H. Thornton, Business Manager of Louisiana State Penitentiary. Mr. Thornton’s testimony was essentially the same as Captain Butler’s. His testimony was to the effect that no particular skill was involved in the position of Correctional Officer I or Supervisor of Laundering and Cleaning. Further, that the only qualification for Correctional Officer I was the passage of a Civil Service Examination.
From an examination of the testimony as a whole, it is our feeling that the learned Trial Judge erred in finding that the plaintiff was permanently and totally disabled. Although we are convinced that he would suffer some discomfort in the performance of his duties as Correctional Officer I, we feel that the preponderance of the evidence points to the fact that the injury has healed and that exercise in the carrying out of such duties, though causing some discomfort, would improve his condition. See Fouchea v. Maloney Trucking & Storage, La.App., Orleans, 1959. 108 So.2d 273. The eagerness of plaintiff to return to his work (the record indicates that he returned to work about two months after his injury) and the efforts of the penitentiary personnel to make the performance of his duties as light as possible are all highly commendable. However, in deciding legal questions the law must be applied to the facts as established in the record, and under the facts in this case we feel that the plaintiff has not established his claim of total permanent disability.
Having decided that the plaintiff has not established total permanent disability, it is not necessary to treat of plaintiff’s contention that he was a skilled employee as Correctional Officer I and due to injury, he has been forced to take a position as an unskilled employee as Supervisor of the Laundry. From the record, however, it would appear that since both the position of Correctional Officer I and Supervisor of the Laundry required no special training or apprenticeship, were positions of equal pay, and only the passage of a Civil Service Examination was required, it would appear that they were requisite of the same qualifications whether considered skilled or unskilled.
For the reasons hereinabove set forth the judgment of the trial court is reversed, and judgment is herein rendered dismissing plaintiff’s demand at his costs.
Reversed.