135 So.2d 920

Joseph R. LAWES

v.

HOUSTON FIRE AND CASUALTY
INSURANCE COMPANY.

No. 45582.

Dec. 11, 1961.

Rehearing Denied Jan. 15, 1962.

Leon A. Picou, Jr., St. Francisville, for plaintiff.

Holt, Holt, Kramer & Hamm, Alexandria, for defendant.

HAMITER, Justice.

Joseph R. Lawes experienced an accident on February 28, 1959, while performing the duties of his civil service employment with the Louisiana State Penitentiary as Correctional Officer Grade I at a monthly salary of $290, it resulting in the fracture of certain bones in his right leg between the knee and ankle (no joints were involved). Thereafter, the maximum weekly workmen's compensation was paid to him until May 3, 1959, at which time he returned to work with the penitentiary as Supervisor of Laundry and Cleaning (a position also in the classified service) at a salary identical with that earned prior to the accident.

Following cessation of the mentioned weekly benefits Lawes instituted the instant suit against his employer's insurer, Houston Fire and Casualty Insurance Company, in which he seeks an award of compensation as for total and permanent disability.

The district court rendered judgment in favor of plaintiff as prayed for. On appeal

the Court of Appeal found that he was not disabled within the contemplation of the statute and, accordingly, dismissed the suit. See La.App., 127 So.2d 84. We granted certiorari.

It is the contention of plaintiff here, just as it was in the Court of Appeal, that as Correctional Officer Grade I he was engaged in rendering skilled services which, since the accident, he is no longer able to perform without great pain and suffering; that, although he returned to work for the same employer and at the same salary, he is now handling a much lighter job, the duties of which require no skill and are entirely different from those that he initially discharged; and that, therefore, he is totally and permanently disabled within the meaning of LRS 23:1021 et sequentia.

Section 1221 of such statute sets forth the compensation payable to employees under various circumstances of disability "to do work of any reasonable character." And, with reference to it, this court in Morgan v. American Bitumuls Company, 217 La. 968, 47 So.2d 739, 741, stated: " * * * Our jurisprudence is settled that the clause 'disability to do work of any reasonable character', as contained in the compensation statute, means disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred.

* * *" This interpretation was later approved in Wright v. National Surety Corporation et al., 221 La. 486, 59 So.2d 695, Brannon v. Zurich General Accident and Liability Insurance Company et al., 224 La. 161, 69 So.2d 1, and Reed v. Calcasieu Paper Company, Inc., 233 La. 747, 98 So.2d 175. Incidentally, in the Brannon case we noted: "There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. * * *" [224 La. 161, 69 So.2d 3.]

The record in the instant cause discloses that prior to the accident the duties of this plaintiff as Correctional Officer Grade I were to operate the electrically controlled gates of the penitentiary's "A" Building to which he was assigned, or to open and close them manually if any malfunction occurred; to supervise the work of inmates in and around such building; and to "shake down" (search for weapons), with the assistance of other officers, ingoing and outgoing prisoners and visitors, this occasioning considerable stooping on his part. Most of the activities involved some walking. However, it does not appear that any skill was required, as plaintiff contends, in the handling of such job. In fact, Captain John C. Butler (Chief Security Officer at the penitentiary and plaintiff's superior and his witness at the trial) testified:

"XQ. Are there any particular skills required of Correctional Officer #1? A. No, sir, they are not skilled men. The only thing they have to be good Security men.

"XQ. They have to be reliable citizens, and of good integrity? A. Yes, sir.

"XQ. But no particular skill is required? A. No, sir."

As we have indicated previously the position of Supervisor of Laundry and Cleaning, in which the plaintiff is presently employed and which he assumed two months after the accident (whereupon compensation benefits ceased), is also classified under civil service and pays the same salary as that of Correctional Officer Grade I. Therein, he checks in and out all garments brought to the shop, prepares identification slips, collects money, and oversees the laundry and cleaning operations which are conducted by certain prisoners of the institution called "trusties" (obviously this last mentioned activity requires some walking and stooping).

Although the work of the two positions is not identical, so far as we are able to determine from the record it is reasonably similar in nature, particularly since no skill or unusual strength is necessary in either job. True, plaintiff testified that he could not perform his former duties because "I am crippled to start with, and I am not physically able to combat them" (the word "them" refers to the inmates). But this testimony is not corroborated by the medical evidence. Moreover, plaintiff admitted that in his present position he has no correctional officers to protect him in the event the prisoners become unruly in the cleaning shop; whereas in the former one usually there were other officers nearby.

As to the medical testimony, Dr. William E. Smith (plaintiff's witness) testified that when he examined plaintiff (some two and one-half months prior to the trial and eight and one-half months after the resumption of work) he found no apparent acute distress; that the fractured bones were well healed and in good position and alignment; and that while he noticed some swelling in the ankle of the fractured right leg he also observed approximately the same amount in the left ankle and hence, in his opinion, such swelling was not a result of the accident. He did feel that plaintiff "has some slight limitation of motion at the right ankle at this time, lacking about 15 degrees of plantar flexion as compared to his left side." This limitation the doctor evaluated as a five percent disability of the lower extremity, or less than five percent total disability. He attributed it to the immobilization of the ankle joint when plaintiff's leg was in a cast, and he thought that eventually it would disappear with normal activity and use. Dr. Smith further stated that there was nothing which would lead him to believe that the leg would be injured

by plaintiff's engaging in some stooping and walking.

The testimony of Dr. Alvin Stander, called by defendant, was of much the same tenor except that he had not noticed any appreciable limitation of motion with respect to the ankle. He further stated that in his opinion plaintiff would be able to walk two or three hours a day and perform intermittent stooping. As did Dr. Smith, he said that there might possibly be some pain, but not "a great deal"; and that it would not be disabling.

In view of the evidence we are compelled to hold that the accident and injury did not render plaintiff totally disabled on a permanent basis. Following his return to work he, at the most, was only partially disabled for a short time; and during such period of partial disability he received wages for services of a character reasonably similar to that which he was performing when injured. This being true, the following observation from Morgan v. American Bitumuls Company, supra, wherein the employee was found to have only a partial disability, would appear to be applicable: "* * * According to the statute the payments are to be computed at 'sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee *is able to earn* thereafter during the period of disability, not, however, beyond three hundred weeks.' The last referred to wages obviously mean those which the claimant is able to earn at work similar to that which he was performing when injured, * * *." [217 La. 968, 47 So.2d 741]

However, it is important to notice that during the period of his partial disability (if it did exist) this plaintiff was able to and did earn a salary equal in amount to that which he initially received. Accordingly, and particularly since there was no difference in the salaries earned in the respective reasonably similar positions, he was not entitled to receive compensation for partial disability.

For the success of this action counsel for plaintiff cite and rely on Carlino v. United States Fidelity and Guaranty Company, 196 La. 400, 199 So. 228, Mottet v. Libbey-Owens-Ford Glass Company, 220 La. 653, 57 So.2d 218, Brannon v. Zurich General Accident and Liability Insurance Company et al., supra, Reed v. Calcasieu Paper Company, supra, and certain Court of Appeal decisions. But in those cases, involving factual situations unlike the one here, the employees after the accident could not perform work reasonably similar in character to that undertaken on the occurrence of the accidents or they were unable to discharge their original duties without suffering great and substantial pain. Actually, in most of them the employees were required to accept employment of an entirely different nature and for much lower wages. For example, in the Brannon case the employee carpenter

could no longer perform the major portion of the duties of his skilled occupation and was compelled to work as a night watchman at about 55 cents per hour as contrasted with the $1.87½ per hour he had received previously.

For the reasons assigned the judgment of the Court of Appeal, which dismissed the plaintiff's suit, is affirmed.