150 So.2d 828 (1963)
Jerry W. ANDERSON, Plaintiff and Appellant,
v.
ROWAN DRILLING COMPANY, Defendant and Appellee.
No. 787.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1963.
Rehearing Denied March 27, 1963.
Certiorari Refused April 17, 1963.
*829 Simon & Trice, by J. Minos Simon, Lafayette, for plaintiff-appellant.
Cavanaugh, Hickman, Brame & Holt, by Meredith T. Holt, Lake Charles, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
*830 HOOD, Judge.
In this workmen's compensation suit plaintiff contends that he is totally and permanently disabled as the result of a skin infection sustained by him during the course of his employment by defendant, Rowan Drilling Company. After trial on the merits, the trial judge found that plaintiff suffered a contact dermatitis while working for defendant, which skin condition has disabled him from performing work where he is required to come in contact with certain chemicals to which he was allergic. The court further found, however, that plaintiff was a common laborer, and that the dermatitis did not disable him from doing "work of any reasonable character," within the meaning of the Louisiana Workmen's Compensation Act. Judgment accordingly was rendered in favor of defendant dismissing the suit, and plaintiff has appealed.
Plaintiff, who was then about 20 years of age, was employed by defendant on July 7, 1958, as a roughneck on drilling rigs. Actually, there was no work classification designated as a "roughneck," but that term is used generally to describe laborers on drilling rigs, and it includes those workers who are properly classified as floormen, derrickmen and enginemen. Plaintiff, as a roughneck, performed all three of these last-named types of duties while working for defendant. In performing his duties as a "floorman," and occasionally as a "derrickman," he came into frequent and prolonged contact with caustic drilling mud, diesel oil, rigwash, paint thinners and paint. Rigwash is a detergent or form of soap used in cleaning the rig. About March 1, 1959, he developed a skin rash which persisted until he consulted Dr. Ardley Hebert, a general practitioner, who diagnosed his condition as a contact dermatitis, or a reaction to something with which he had come in contact. The rash cleared up promptly under treatment by Dr. Hebert, and plaintiff was discharged by him on March 26, with the advice that he return to work, but that he avoid contact with these chemicals, although no tests were made by the doctor to determine which of these chemicals had caused or were causing the reaction. Plaintiff returned to work and was assigned the duties of engineman, or diesel electric motorman, which required little, if any, contact with drilling mud, diesel oil and rigwash, and in that position he experienced no difficulty with the dermatitis. About three months later, however, he returned to the rig floor to work as a floorman, where he again came in prolonged contact with drilling mud, rigwash and diesel oil, and the rash then reappeared.
In September, 1959, he voluntarily left that employment and obtained a job with his present employer, Oil Center Tools. He at first worked in the office of that company, but shortly thereafter he was transferred to the machine shop where he operated a power saw. In performing those duties he came in contact with different types of cutting oils used in running the saw, one of which was a soluble cutting oil, and the skin rash again appeared. He was then assigned to operating turret lathes, where he came in contact with cutting oils less frequently, and he was still performing those duties at the time of the trial, which took place more than two years after leaving defendant's employment. He states that the rash still breaks out once in awhile, but that he is able to keep it under control and it does not interfere with the performance of his duties.
Plaintiff has been examined by several medical experts, including a number of dermatologists, and their testimony convinces us, as it did the trial judge, that plaintiff sustained a contact dermatitis during the course of his employment by defendant, and that this skin condition has disabled him since that time from performing work which requires him to come into frequent and prolonged contact with certain chemicals. The evidence is not clear as to the exact chemicals to which plaintiff is sensitive, but it appears that he will develop a disabling skin rash upon prolonged contact with diesel oil and with a *831 soluble cutting oil, being one of the types of cutting oils used by him while working for his present employer. Although the medical testimony does not show that plaintiff is unusually sensitive to caustic drilling mud, the evidence indicates that prolonged contact with such mud may burn or irritate normal skin, and for that reason elaborate precautions were taken by defendant to prevent workers from coming into contact with this substance. Running water, facilities for taking showers and jars of vinegar were kept available for the immediate use of the worker in case he did come in contact with it.
Plaintiff does not seek compensation for the very short period of time during which he was disabled by the attack of dematitis. He contends that he is entitled to compensation based on total and permanent disability, because if he returns to his job as a roughneck it will be necessary for him to come in contact with the chemicals to which he is allergic, and due to his susceptibility to dermatitis he is no longer able to perform that type of work. Plaintiff maintains that he is trained, experienced and skilled in a special trade or work, that is, the work of a roughneck on a drilling rig, and that because of his skin condition he is totally disabled from continuing the only trade or work for which he is suited by training and experience. For those reasons he contends that he is disabled from performing "work of any reasonable character," within the meaning of the Workmen's Compensation Act.
Defendant, on the other hand, contends that plaintiff is not trained, experienced and skilled in any special trade or work, that his employment by defendant was as an "unskilled worker" or a "common laborer," and that although he may be disabled from performing a few duties where he is required to come in contact with certain chemicals, he is able to perform many other similar types of work, and thus he is not substantially handicapped from competing with able-bodied workers in the common labor market. Defendant maintains, therefore, that under those circumstances plaintiff is not disabled from doing work of any reasonable character.
The jurisprudence is settled to the effect that when an employee is trained, experienced and skilled in a special trade or work, and then as the result of a workconnected injury he becomes disabled from performing the only type of work to which he is suited by training and experience, or work of a similar character, the disability must be construed as total disability to do "work of any reasonable character," within the meaning of the Workmen's Compensation Act. LSA-R.S. 23:1221; Ranatza v. Higgins Industries, 208 La. 198, 23 So.2d 45; Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50. If the injured or disabled employee, however, is an unskilled laborer, that is, one who is not specially equipped by training, experience and skill in a particular trade or type of work, he participates in a broader and more varied field of labor, and he is not considered as being disabled from doing "work of any reasonable character" unless his disability is of such a nature that it substantially handicaps him in competing with able-bodied men in the common labor market. Hughes v. Enloe, 214 La. 538, 38 So.2d 225; Olivier v. Liberty Mutual Insurance Company, supra; Comoletti v. Ideal Cement Company, La.App. 1 Cir., 147 So.2d 711; Malone, Louisiana Workmen's Compensation, Sec. 275.
In many cases it is difficult and unrealistic to classify a worker as a skilled, semi-skilled or common laborer in order that the rules hereinabove stated may be applied. For that reason, we think there must be some flexibility in making that determination, and that each case must stand on its own peculiar facts.
In that connection we quote with approval the following observation by Professor Wex S. Malone in his treatise entitled Louisiana Workmen's Compensation *832 Law and Practice, Chapter 13, Section 275 (1962 Pocket Part, page 118):
"This flexibility is afforded by the broad phrase, `work of any reasonable character' as set forth in the compensation statute. As the extent of skill required in the work performed prior to accident increases, there should be a correspondingly increased insistence that the new work closely resemble the old. Nothing more definite than this is possible or practical."
In Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, our Supreme Court said:
"There is, of course, no hard and fast rule that can be laid down for guidance in the application of this rule to the limitless variations of fact presented to the courts. Each case must stand on its own peculiar facts. As was pointed out in the Wright case [Wright v. National Surety Corp.] [221 La. 486, 59 So.2d (695) 697], `The question here, as in all these cases, is whether plaintiff is "disabled to do work of any reasonable character" within the intendment of the compensation statute'."
The evidence in the instant suit establishes that plaintiff worked for defendant from July, 1958, to September, 1959, a period of about 14 months, and that he has worked for his present employer in a machine shop continuously since the last-mentioned date. He states that he worked as a roughneck for two other drilling companies before starting to work for defendant. There is no indication as to how long he worked for these former employers, but since he completed high school and two years of college before starting to work as a roughneck, and then began working for defendant when he was only 20 or 21 years of age, it is apparent that he acquired very little experience as a roughneck before the skin infection occurred.
The evidence also shows that no training, experience or skill of any kind was required in order for plaintiff to perform all of the duties which were assigned to him during his employment by defendant. Truman F. Graham, the Division Safety Director of defendant company, and David McCary, its Rig Superintendent, both testified that no experience or training was required for that type of work, that the only requirement for employment as a roughneck was that the employee pass the physical examination, that an inexperienced person could go to work immediately as a roughneck if physically able to do so, and that the defendant hires inexperienced men to do that work "all the time," although they prefer to hire experienced men if they are available.
In Olivier v. Liberty Mutual Insurance Company, supra, the plaintiff was an apprentice plasterer who had been employed and worked as a plasterer for two years at the time he developed a contact dermatitis due to cement. The evidence showed that plaintiff required a period of four years' training before he could qualify as a journeyman plasterer. The Supreme Court held that plaintiff in that case could not be classified as a skilled laborer, because he had not completed the four-year period of training required for becoming a journeyman plasterer. Although the plaintiff's skin condition was such that it disabled him from performing work where he was required to come in contact with cement, he could perform many other types of labor, and for that reason it was held he was not disabled from performing work of any reasonable character. In so holding, the court said:
"To answer plaintiff's contention that he is totally and permanently disabled under the facts of this case we think it is necessary to determine whether he should be classified as a skilled laborer. He certainly cannot be classified as a skilled laborer, for, as disclosed by the record, he was a plasterer's apprentice engaged in learning the plasterer's trade and would be required to work for four years as an apprentice in order to acquire the skill necessary to become a journeyman plasterer.

*833 Plaintiff therefore cannot claim that his chosen calling is that of plasterer. Probably the most important factor is that the facts of this case disclose that the plaintiff here is not trained and experienced in the special trade of a pasterer. Whether an employee is a skilled laborer, of course, must be determined by the facts disclosed by any given case. Thus, has the disability of which the plaintiff here complains rendered him unable to perform work of a similar character to that which he was accustomed to perform, or, as stated by Malone, has the disability substantially handicapped this plaintiff in competing with able-bodied workers in the common labor market?"
In Glidden v. Alexandria Concrete Company, La.App. 3 Cir., 132 So.2d 514 (judgment annulled and set aside in part, 242 La. 625, 137 So.2d 894), plaintiff was employed by defendant as a cement truck driver, a job requiring him to operate the loading and unloading mechanisms of the trucks and to come in contact with wet and dry cement. He contracted acute cement dermatitis on the job, which later developed into a "chromate sensitivity," of such a severe nature that slight perspiration caused a recurrence of his skin eruptions. We concluded that under those circumstances he was totally and permanently disabled from performing work of any reasonable character. The Supreme Court, however, in reversing our decision and remanding the case, held that:
"The operation of a cement-mixer truck, which was learned in four days or less in this instance, cannot be regarded as a skill or trade that becomes the life pursuit of a worker, such as a carpenter, bricklayer or plasterer. On the other hand, plaintiff should not be considered as merely a common laborer whereby the criterion of disability, as suggested in some of the authorities and by Malone, Louisiana Compensation Law and Practice, Section 275, p. 334, would be whether or not the worker's competitive position in the market for common labor has been substantially affected as a consequence of the accident or disease. Plaintiff did possess a calling; certainly a semi-skill if not a skill, that of a truck driver (Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695) and, although he is no longer able to be a truck driver for a cement company, the large area in which the services of truck drivers are essential is otherwise open to him. Indeed, the situation, here, parallels in principle that presented in Saltzman v. Lone Star Cement Co., La.App., 55 So.2d 674, where a welder, who was injured in a cement plant and could no longer work around cement, was held not to be totally and permanently disabled because he could practice his trade of welding in any number of other places where he would not have to come in contact with cement."
In Lathers v. Schuylkill Products Co., La.App. 1 Cir., 111 So.2d 530, plaintiff was employed as a lead skimmer and while so employed he contracted a lead poisoning. He claimed compensation benefits based on total and permanent disability, since he could not return to his original job as a lead skimmer because of the lead poisoning. The Court of Appeal, in holding that he was not totally disabled, quoted with approval from Jackson v. Steel Fabricators, La.App. Orl., 90 So.2d 397 (Cert. denied), as follows:
"* * * if a common laborer sustains injury which may prevent him from engaging in one or two or even a few particular kinds of common labor but that he is nevertheless able to do many other kinds of common labor, he is not totally disabled * * *."
Plaintiff relies on the case of Fruge v. Pacific Employers Ins. Co., La.App. 1 Cir., 71 So.2d 625 (affirmed, 226 La. 530, 76 So.2d 719), as authority for his argument that a roughneck must be classified as a skilled worker. In that case the claimant worked *834 on a drilling rig, performing duties similar to those which were performed by plaintiff in this case. During the course of that employment a piece of pipe fell on his foot, fracturing the tibia and fibula at the ankle. The trial court found that plaintiff was "nothing more than a laborer," that he was totally disabled for about two years immediately following the accident, and that he was only partially disabled from performing work of any reasonable character after that time. The Court of Appeal disagreed with the trial court's finding that plaintiff was only partially disabled, since it found that he was "unable to perform labor without pain," and accordingly, the judgment was amended to award compensation based on total and permanent disability. In its opinion, however, the Court of Appeal also stated:
"The trial judge, apparently impressed with the fact that the plaintiff could not drive an automobile nor operate the mud making machine used in the drilling process, concluded that he `was nothing more than a common laborer'. While we agree that the record discloses that he could not perform all the duties incidental to operating a drilling rig, we are nonetheless impressed with the fact that the plaintiff did perform (and apparently satisfactorily) all of the duties imposed upon him. Taking these duties as a whole we are unable to agree with the trial judge's conclusion that this man was `nothing more than a common laborer'."
Based largely upon the above-quoted language, counsel for appellant in this case interprets the Fruge decision as holding that a roughneck on a drilling rig is a skilled worker. We, however, find no specific holding to that effect, the above-quoted language being the only statements which could justify such a conclusion. Also, the court had already concluded that plaintiff could not perform manual labor without pain, and thus he was disabled, so it was not necessary for it to consider whether plaintiff was or was not a skilled laborer. And, finally, immediately after the quoted language was used, the court cited and discussed the cases of Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695, and Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739, and then pointed out that "the criteria in cases of this sort is not simply whether the claimant is a skilled or common laborer, but whether he is disabled to do work of the same or similar description." After emphasizing a quotation from the Wright case, "But be this as it may, the question for decision is whether plaintiff can do work of a reasonable character," the Court of Appeal then concluded:
"We think the above expression decisive of the issue here. The work performed by plaintiff subsequent to the accident, i. e., dealing cards and assisting a plumber, in the light of his previous duties, we do not think to be work of a reasonable character within the meaning and intendment of our compensation statute and we therefore conclude that the plaintiff is totally and permanently disabled."
It seems to us, therefore, that in spite of the above-quoted language the plaintiff in the Fruge case was considered as an unskilled laborer, and the case was decided on that basis. We do not interpret that case as holding that the plaintiff, who performed the usual duties of a roughneck, was a skilled worker.
Finally, in the recent case of Comoletti v. Ideal Cement Company, supra, the plaintiff had worked as a general helper at defendant's cement plant for four and one-half years, having served as assistant kiln burner, truck driver, payloader operator, belt man, raw mill helper and finished mill helper. The evidence showed in that case, as it does in the instant suit, that no particular skill, training, instruction or preparation is necessary for the different performances of such duties. Under those circumstances the court concluded that, "plaintiff was not a semi-skilled laborer as contended by esteemed counsel for plaintiff but only a common *835 laborer." In determining that plaintiff was not totally and permanently disabled, the court applied the following rule:
"In cases of this nature, the test applied to a common laborer is whether the injured employee can no longer substantially compete for regular employment with able-bodied workers in the flexible market for common labor. Blanchard v. Pittsburgh-De[s] Moines Steel Co., [La.App., 59 So.2d 384] supra. A common laborer whose injury prevents his engaging in one or two, or even a few particular kinds of common labor, but who nevertheless can perform other kinds of common labor is deemed capable of substantial competition in the regular common labor market and is, therefore, not totally and permanently disabled. Lathers v. Schuylkill Products Co., La.App., 111 So.2d 530; Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50."
The evidence in the instant suit clearly shows that no special training, experience or skill was required in order to qualify or enable plaintiff to perform the duties of his employment by defendant as a roughneck, or as a floorman, derrickman or engineman on a drilling rig. We conclude, therefore, that plaintiff was not specially equipped by training and experience to do only the work of a roughneck, particularly in view of the relatively brief period of time he was engaged in that type of work, and thus he was not a "skilled worker," as that term has been used in our jurisprudence relating to claims for workmen's compensation benefits.
Plaintiff's skin condition prevents him from engaging in one or two, or even a few, particular kinds of unskilled labor, being those where he is required to come in contact with the two or three chemicals to which he is allergic, but he is able to perform many other types of work. After reviewing all of the facts, we conclude, as did the trial judge, that plaintiff's injury or condition does not substantially handicap him in competing with able-bodied men in the common labor market, and accordingly, that the dermatitis which he contracted while working for defendant is not an "injury producing permanent total disability to do work of any reasonable character," within the meaning of LSA-R.S. 23:1221(2).
In view of our conclusion that plaintiff is not totally disabled, it is unnecessary for us to consider the further argument urged by defendant that plaintiff has failed to show a connection between his employment and his disability, or plaintiff's additional claim for penalties and attorney's fees.
For the reasons herein set out, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
TATE, Judge (dissenting).
The majority has held that the plaintiff is not entitled to workmen's compensation, even though it concedes that he is now disabled from returning to the high-paying field of oil well drilling as a result of workcaused occupational disease. This holding, of course, is completely contrary to our entire compensation jurisprudence. In the writer's opinion, it results from an unrealistic and overly mechanical application of the "skilled worker vs. unskilled common laborer" test.
To summarize the facts, the plaintiff became disabled while working for the defendant Rowan. The cause of the disability was a contact dermatitis, caused by either caustic mud burns or else a sensitization because of prolonged exposure to certain chemicals commonly used in the process of operating oil well drilling rigs. Because of the sensitization resulting from his work on the defendant Rowan's drills, the plaintiff is now subject to a painful and disabling skin rash and infection, which appears *836 over his arms, legs, and thighs immediately upon any re-exposure to the chemicals and oils commonly used in drilling oil wells. The doctors state that the only method to avoid this painful and disabling condition is to cease doing the type of work in which the sensitization to these chemicals occurred.
Both the trial court and the majority accept this virtually uncontradicted medical testimony. Nevertheless, the claimant is denied compensation for this work-caused disabilityfor this work-caused inability to return to the high-paying work of oil field drilling roughneckbecause allegedly the plaintiff was only a common laborer and still has many occupational fields open to him.
This holding is in diametric opposition to our entire compensation jurisprudence.
As re-stated recently in Lawes v. Houston Fire and Casualty Insurance Co., 242 La. 251, 135 So.2d 920, 921: "`Our jurisprudence is settled that the clause "disability to do work of any reasonable character", as contained in the compensation statute, means disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred. * * *'"
In the present instance, the claimant, a man with two years of college, had worked for two other drilling firms before going to work for the defendant Rowan, by whom he was employed for about fourteen months before he finally was forced to cease work upon the recommendation of the attending physicians, because of the continuing serious recurrence of the disabling contact dermatitis immediately upon his re-exposure to the drilling chemicals. So far as the record shows, this is the only employment he had held since finishing high school and two years of college. At the time of the disabling manifestation of the sensitization of his skin, he was earning $131.84 per week!
The highly-paid roughneck's duties include coordinated teamwork with the two other drilling employees on the 8-hour shift in the management of the complex and expensive machinery and specialized tools and procedures used in drilling oil wells. To hold that he is nothing but a common laborer not only flies in the teeth of the holding on the identical question in Fruge v. Pacific Employers Ins. Co., La.App. 1 Cir., 71 So.2d 625 (see also, 226 La. 530, 76 So.2d 719, affirming the award of penalties against the defendant), but it is also completely unrealistic.
The majority bases this holding on the testimony of two of the defendant's managerial employees to the effect that no experience or training was required before a roustabout is first hired. These admintrators did admit that experienced roustabouts are preferred and that the longer an employee works as a roustabout the greater experience and skill he acquires.
The substance of their testimony, of course, is only that to fill vacancies from time to time an inexperienced man is hired when no experienced roustabouts are available. This must be so, since there is no trade school or college in which to learn the highly skilled and paid duties of a roustabout, and the only way the labor force of skilled roustabouts can be maintained is by hiring new men from time to time and training them on the job.
Just because a new roustabout may on occasion be hired without previous experience or training, does not mean that he may not become skilled on the job. Because an inexperienced man is hired from time to time and trained on the job, does not mean that the work does not require skilled workers. It would be patently ridiculous to assume, and these managerial employees did not so testify, that an entire crew of unskilled common laborers could be hired to perform the co-ordinated teamwork in managing the expensive and complex machinery and tools and chemicals used in drilling an oil well. It is further to be remembered that the defendant *837 Rowan did not acquire the services of the claimant himself as a raw and untrained laborer, but that it hired him only after he had acquired knowledge of the skills and duties needed by a roughneck through the experience and training the claimant had acquired by working for two previous drilling employees.
The record shows that this claimant earned $131.84 per week for performing his duties as a roughneck. To suggest that his work could be as well performed by an ordinary run of the mill ditchdigger or any other type of unskilled common laborer, is to convict the drilling management of a waste of its stockholders' monies by paying such high wages for the skilled men actually utilized, instead of hiring common labor from the streets at one-third the cost. I personally prefer to think of the management as not wasting these high wages, but instead of as paying them for what they are gettingthe services of men with an above-average degree of skill and aptitude, based primarily on the learning and experience they have gained while working with drilling crews.
It is common knowledge that in Southwest Louisiana the highest paid work a man of ordinary education may obtain outside of our relatively few industrial plants, is in oil field drilling work. The plaintiff is now barred from obtaining further work in this important range of economic activities in which he has obtained experience and training sufficient to enable him to have preferred employment opportunities. This is an important field of employment, employing many thousands of working men, from which the claimant is now barred because of the disability by reason of contact dermatitis caused by the caustic burns or continued exposure sustained at work for the defendant-employer.
To demonstrate the importance of the field of employment from which the claimant is now barred because of his workcaused disabling contact dermatitis, it might not be inappropriate to note the following from the Statistical Abstract of the United States, 1961 (U. S. Government Printing Office, 1961), published by the Bureau of the Census, United States Department of Commerce:
In 1960, there were 23,468 producing oil wells in Louisiana; in that year, 3697 new oil, condensate, and gas wells were drilled (of which 1,395 were dry holes). Page 728, Statistical Abstract. The "mining" industry (in Louisiana consisting mostly of petroleum production workers) is the seventh largest field of non-agricultural employment in this state. Page 211. Employees in petroleum and natural gas production with an average weekly wage of $114.49 were the fifteenth highest paid non-supervisory production workers of the approximately 250 occupations listedfor instance being exceeded in average weekly wages by petroleum refining employees ($118.44) and motor vehicle manufacturing employees ($114.65), but earning on the average more than railroad employees ($108.42) or aircraft manufacturing employees ($110.65) or newspaper production employees ($105.81); also, compare the oil production workers average weekly earnings of $114.49 with the average weekly earnings of bank employees ($69.94) or laundry employees ($48.07) or employees of general merchandising stores ($49.97). Table No. 279, pp. 208-210, Statistical Abstract.
The majority, it seems to me, has completely missed the meaning of the holding in Glidden v. Alexandria Concrete Co., 242 La. 625, 137 So.2d 894. There, it is true, the Supreme Court held that a truck-driver formerly employed driving a cement truck could not be considered disabled because the cement dermatitis acquired on the job prevented his continued exposure by driving cement trucks. This was because, "although he is no longer able to be a truck driver for a cement company, the large area in which the services of truck drivers are essential is otherwise open for him." 137 So.2d 896. (Italics supplied.) However, and this is what the present majority seems to have overlooked, the case was *838 remanded to determine whether the skin eruptions on driving other types of trucks were disabling enough to prevent him from obtaining employment in the "large area" of his semi-skill outside of driving cement trucks.
In the present instance, the claimant is completely disabled from returning to work as a roughneck, the highly-paid field in which he had been engaged all his former working lifea "large area" of economic activities now barred to him because of his work-caused disability. It is as if the Glidden of the Glidden case is disabled by his dermatitis from driving not only cement trucks, but all other types of trucksin which event, as the Supreme Court clearly indicated by its holding and its remand, Glidden is entitled to compensation for total and permanent disability.
I might add that, even if the claimant were considered only a common laborer, he is because of his work-caused disability "substantially handicapped in competing with able-bodied workers in the common labor market", Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50, 53, in that he cannot compete for the wide range of numerous positions open in the oil drilling industry (that is, if we should be unrealistic enough to say that oil roughneck positions are really in the common labor market and readily available to any unskilled person).
The claimant has, following the medical advice to leave the oil well drilling field, been employed by a firm in Houston, first as a clerk and later as a lathe operator. It is of course settled that the circumstance that he has been able to acquire another skill and a job in another occupation does not bar him from receiving compensation for the substantial work-caused disability and impairment of earning ability sustained in the occupation in which he was injured. Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Malone, Louisiana Workmen's Compensation (1951), Section 273.
For the reasons perhaps too lengthily stated, I respectfully dissent from the denial of the plaintiff's claim by my esteemed and conscientious brethren of the majority.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents.