CULPEPPER, Judge.
This is a workmen’s compensation ease. Plaintiff seeks benefits for total and permanent disability resulting from her being shot during a robbery of defendant’s convenience store, where she was working as a retail clerk and store manager. The trial judge awarded compensation at the rate of $65 per week for 400 weeks. The defendants appealed.
Since this accident occurred on December 1, 1974, the definition of total and permanent disability is controlled by the statutes and jurisprudence before the 1975 amendments to the Workmen’s Compensation Act.
The substantial issue is whether plaintiff is disabled by fear of working in places *740 similar to convenience stores, where robberies occur.
Plaintiff graduated from high school and then completed a 9-month course in a business school. At the time of the accident, she had been working for Phil-A-Sac about two years. Her principal duty was that of retail clerk, mostly at night and alone. But she was also in charge of the store’s inventory, cash flow, purchasing, maintenance and managing employees.
On December 1, 1974, a black male came into the store, pointed a pistol at her and ordered her to place the contents of the cash register in a paper bag. As the robbery was in progress, sheriff’s deputies entered the store and a “shoot out” occurred between the robber and the deputies, during which plaintiff was shot in the shoulder by the robber.
Plaintiff was hospitalized from the date of the accident until December 7, 1974. The bullet in her shoulder could not be removed because of her great weight, 330 pounds. Her treating physician discharged her as being able to return to work on January 14, 1975. On that date, she returned to her same job and workmen’s compensation payments were terminated.
She continued to work at the convenience store for about six weeks. She testified she could not stand staying in the store alone at night, for fear of being robbed again. However, she did not quit because she needed the wages. At the end of the six weeks, she was fired, the reason given by her employer being that she could not control the inventory.
She found another job with Dixie Photo Supply in Lafayette, beginning in March of 1975. This was also night work, from 9:00 P.M. to 6:00 A.M. But she worked in a building with about 25 other employees, some of whom were men, and she felt secure from robberies. In this new job, she used the same skills which she had learned at business school, and which she had used in the convenience store, i. e., operation of business machines, typing, filing, and other business procedures. By the time she left Dixie in August of 1977, on a maternity leave, she had been promoted to supervisor of her department, with other employees under her direction. At the time of trial, she was earning $3.00 per hour from Dixie, which was more than she earned at the time of the accident.
Other relevant facts concern her personal life. At the time of the accident, she was married to a Mr. Lalonde and they had marital difficulties. After the accident, she left Lalonde and on June 12, 1976 married her present husband, Earl Lavergne, who is the manager of another convenience store. She is much happier with Lavergne, has lost 30 or 40 pounds, and became pregnant. This pregnancy was the cause of her leaving her employment with Dixie.
This suit was filed in January of 1976. She alleged both physical and mental disability to return to the same or similar work that she was performing at the time of the accident. However, the evidence shows, and the trial judge found, that she has no physical disability. Her disability, if any, is that she cannot return to work in a place where she would be afraid of robberies.
Plaintiff is a skilled worker. In the recent case of Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977), our Supreme Court stated the applicable rule for determining permanent and total disability of a skilled worker:
“ ‘[A] skilled worker is deemed totally disabled within the intendment of the law if he is unable to do work of the same character as that which his training, education, and experience qualify him to perform, without unusual difficulty or danger. This rule is applicable to a skilled worker who cannot perform a substantial portion of the work incident to his special occupation. The fact that he may be able to perform the work through assistance does not alter the result. The law looks only to the occupation capacity of the injured employee.’ See also Lawless v. Steel Erectors, Inc., 254 La. 37, 222 So.2d 849 (1969).”
*741 Two psychiatrists testified at the trial. Dr. William P. Cloyd, a witness for the plaintiff, examined her on May 31, 1977. Dr. Cloyd expressed the opinion that plaintiff was suffering from a “psycho-neurotic depressive reaction.” He explained that the symptoms were a mixture of anxiety and depression. However, in answer to a question on direct examination as to whether plaintiff could return to work as a retail clerk, the doctor stated: “Yes, I think with reasonable medical certainty, she can now return to the type of work that she had been doing as a retail clerk.” Later in his testimony he stated that he did not think she would ever return to work in a situation where robberies or violence were likely to occur, because she is now “gun-shy.” However, he stated that plaintiff could perform all the duties previously associated with her job as clerk and manager of a convenience store in an environment where she is not working alone and not subjected to the possibility of a robbery.
Dr. James Blackburn, a psychiatrist, testified for the defendant. He examined plaintiff on July 15, 1977. Dr. Blackburn, unlike Dr. Cloyd, found no symptoms of psycho-neurotic depression. Dr. Blackburn stated his findings as follows:
“That Mrs. Lavergene had been exposed to a — an obviously traumatic situation in the summer of 1974; that subsequent to that traumatic situation there had been some major changes in her life. That she had some residual anxiety connected with that incident that particularly affected her when she was alone at night or when she was in a situation where she might evidentially be robbed. She was particularly uncomfortable around black male individuals. She feels that she has made a remarkably good adaptation following the accident and the trauma. She had not only extracated herself from the job from which she was already unhappy— she extracated herself from an unhappy marriage, and moved in to a happy marriage, become pregnant, and she was happy and satisfied where she was working —uh, regular hours, doing rather tideous job that requires concentration (inaudible) and ability to tolerate stress — not only that she’s been able to work at that job full time — uh—she has obtained promotions in it.”
The lay-witnesses generally corroborate plaintiff’s contention that because of her fear caused by the robbery, she cannot return to work in an environment where such incidents are likely to occur.
In Malone, Louisiana Workmen’s Compensation, 1964 P.S., Sec. 274 at pages 141-142, there is a discussion of this type of case where the employee can do the same work which he was performing at the time of the accident but not in the same environment. Professor Malone gives as an example the case of Saltzman v. Lone Star Cement Corporation, 55 So.2d 674 (Orl.La.App.1951) where the employee was an electric welder employer in a cement plant. An injury to his foot resulted in a sensitive area which was susceptible to irritation by cement, with the result that he could no longer work in a cement plant. However, he could follow his trade as a welder in any other kind of an environment.
Another case of this type is Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894 (La.1962) in which the driver of a cement-mixer truck contracted cement dermatitis. Although he could no longer drive a cement truck, he could drive any other kind of truck. The Court of Appeal found total and permanent disability. The Supreme Court reversed and denied benefits, citing Saltzman with approval.
Other cases applying the same rationale are: Lawes v. Houston Fire & Casualty Insurance Company, 242 La. 251, 135 So.2d 920 (La.1962); Higginbotham v. Newsom Truck Line, Inc., 181 So.2d 268 (La.App., 4th Cir. 1965); Anderson v. Rowan Drilling Company, 150 So.2d 828 (La.App., 3rd Cir. 1963); and Ragusa v. Aetna Casualty & Surety Company, 190 So.2d 122 (La.App., 4th Cir. 1966).
The case of Lucas v. Insurance Company of North America, supra, is distinguished. In Lucas, the driver of a heavy road-truck, whose duties included assisting in loading *742 and unloading heavy equipment, injured his left hand, disabling him from performing such duties without substantial pain.
We also distinguish Denoux v. Hartford Accident & Indemnity Company, 336 So.2d 268 (La.App., 1st Cir. 1976), cited by plaintiff. Denoux was the manager of a large food store. He suffered head injuries in an automobile accident. Residual physical disabilities included loss of hearing in the right ear, impaired vision and dizziness. The court held that because of these physical disabilities Denoux was unable to perform duties similar to those of manager of a large food store.
We conclude that plaintiff is not disabled from performing work of the same character as that which her training, education and experience qualify her to perform, without unusual difficulty or danger. This is the test stated in Lucas, supra. She can perform without unusual difficulty or danger all of the work for which she was qualified by training and experience at the time of the accident. Her only disability, if any, is her fear of robberies, which would disable her from working where robberies are likely to occur. However, she can work anywhere else and she has had no difficulty finding work suitable for her skills.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendants dismissing plaintiffs suit. All costs in the trial and appellate courts are assessed against the plaintiff.
REVERSED AND RENDERED.
PER CURIAM DENIAL OF APPLICATION BY PLAINTIFF FOR A REHEARING
In her application for rehearing, the plaintiff states that in our original opinion we quoted the testimony of Dr. William P. Cloyd as follows: “Yes, I think with reasonable medical certainty, she can now return to the type of work that she had been doing as a retail clerk.” (Emphasis supplied) After our opinion was rendered, plaintiff obtained from the trial court reporter an affidavit that the above quoted statement was an erroneous transcription, and that Dr. Cloyd actually testified: “Yes, I think with reasonable certainty, she cannot return to the type of work she had been doing as a retail clerk.” (Emphasis supplied)
Plaintiff argues that due to this error in transcription on which we apparently relied, we should grant a rehearing.
As can be seen from our opinion, we took cognizance of the fact that according to the record then before us Dr. Cloyd had given contradictory testimony as to whether plaintiff could return to the same type of work she was doing as a retail clerk at the time of the accident. Then we stated: “However, he stated that plaintiff could perform all the duties previously associated with her job as clerk and manager of a convenience store in an environment where she is not working alone and not subjected to the possibility of a robbery.” It is this latter statement by Dr. Cloyd on which we principally relied.
Even accepting the corrected version of Dr. Cloyd’s testimony, we nevertheless adhere to our original opinion and deny plaintiff’s application for a rehearing.