"GLADNEY, Judge.
This srtit was instituted under the Workmen’s Compensation Act (LSA-R.S. 23 :1021-23:1351) for total and permanent disability benefits and for statutory penalties and attorney’s fees. After trial on the merits of the case the court held the employee had sustained an employment accident as described by him and that it was a compensable injury. Judgment was rendered in favor of the plaintiff, and compensation awarded at the rate of $14.91 per week, not to exceed 300 weeks. Also the court assessed a penalty of 12% on the total amount of compensation granted and fixed attorney’s fees at $250.00. Plaintiff and defendant have appealed.
The issues raised by this appeal concern the extent and duration of the disability, computation of the weekly payments of compensation, and the assessment of penalties and attorney’s fees.
The plaintiff was employed by the defendant to disassemble and dismantle old automobile motors in furtherance of the defendant’s scrap metal business. It is alleged the employee sustained an employment injury which necessitated amputation of the middle finger of his right hand. Funderburk, a 38 year old father of seven children, had lost his left arm by amputation as a result of a childhood accident. On July 2, 1964 the middle finger of his right hand received a mashing injury. He explained that the injury occurred when a sledge hammer having a steel shaft handle pinched and mashed the finger against a motor block he was cleaning. The account of the injury as related by plaintiff was corroborated by plaintiff’s brother-in-law who witnessed the accident and by his wife who dressed the wound when her husband returned to his home.
The injury required clinical treatment on July 4, 1964 at the Confederate Memorial Plospital in Shreveport, and, after medication had proved ineffective, the finger was amputated by the resident orthopedic surgeon at the hospital. An inflamed and tender condition developed in the stump of the finger with inability to close a “tight fist” with the right hand. Tenderness at the stump of the amputated finger was still present at the time of the trial and a preponderance of the medical testimony indicated that the employee could not resume the work he was performing prior to his injury.
The defendant employer did not carry workmen’s compensation insurance. After being notified of the accident, and upon the request of the injured employee, “advances” of $20.00 per week were made, totaling $192.00, the last payment being made on September 11, 1964. Thereafter, notwithstanding demands made, the defendant refused to make further payments.
The record contains the testimony of five doctors of medicine and one osteopath, all of whom testified with respect to the extent and duration of the injury and the disability involved. In reaching the conclusion the employee had sustained temporary total disability as distinguished from permanent total disability, the trial court obviously was of the opinion recovery would result within three hundred weeks without diminution of earning capacity. The position taken by the employer is that the amputation of the middle finger of the right hand has not caused any loss of the ability of the employee to earn as much as he did prior to the injury.
As of the date of trial, approximately six months after the accident, all of the medical examiners found tenderness and *6 inflammation at the stump of the missing finger with inability to close a “tight fist”, and it was thought such condition would clear up after treatment. Of more importance, however, is the question as to the loss of use of the hand and arm as occasioned by the amputation of the finger and whether or not disability in this respect would permanently impair the ability of the employee to earn a living.
Medical testimony was given by Doctors Paul Campbell, osteopath, Ray E. King and Edwin Simonton, orthopedic surgeons, I. F. Hawkins, general practitioner, and Herbert Plauche and Herman May, resident and intern doctors at the Confederate Memorial Hospital. We briefly refer to the testimony of these witnesses. Dr. Campbell expressed the opinion the amputation had injured tendons and this prevented plaintiff from making a fist with his right hand. After administering physiotherapy he decided his treatments were ineffective and referred the patient to an orthopedic surgeon. Dr. Campbell thought plaintiff would never ably perform any work that required gripping an object and could not do any work requiring the use of a sledge hammer. Dr. May was of the opinion the employee would not be able to swing a sledge hammer more than a few times continuously and could not perform a full day’s work. Dr. Plauche was of a similar opinion. Dr. Hawkins at the time of trial found plaintiff could not close his hand but thought with six weeks of physiotherapy he would be able to close his hand and resume the work which he had previously done. Dr. King after examining the hand during the trial testified the stump was tender and plaintiff could not make a full fist. He was of the opinion the employee would have difficulty in competing in the labor market, explaining that the amputation of the finger is a secondary cause to the prior loss of the lower portion of plaintiff’s left arm, that the employee could perform the same work as prior to the amputation but with decreased efficiency and occasional pain. Dr. Simonton’s opinion was that plaintiff would not be able to change tires without difficulty, nor could he lift a sledge hammer and continuously use it without considerable difficulty. After weighing these opinions we think it improbable that plaintiff could obtain employment at a service station or the work he was doing at the time of the accident. The plaintiff’s work record reveals no previous employment other than in a service station and at the job with defendant. He was not qualified through his education for employment except at jobs requiring physical labor.
The impact of such evidence is that the employee will necessarily find it most difficult to perform the same work in the future even if there should be complete healing of his finger and hand. Any work performed must be accomplished with four instead of five fingers. Thus it seems purely speculative to expect the hand will be as useful with the finger missing.
Our holding is that plaintiff must be considered as totally and permanently disabled under the provisions of the Workmen’s Compensation Act.
Our courts have firmly established the principle that the employer must take the worker as he finds him and as a consequence of this rule in determining disability the loss of plaintiff’s left hand plays a significant part in this decision. Recognized also is the legal principle:
“It is well settled that even though a common laborer is not completely incapacitated, he may nevertheless be considered as totally and permanently disabled within the meaning of the compensation statute if the injury has substantially decreased his ability to compete with ablebodied workers in the flexible general labor market. Olivier v. Liberty Mut. Ins. Co., 241 La. 745, 131 So.2d 50; Blanchard v. Pittsburg-Des Moines Steel Co., La. App., 59 So.2d 384; Lathers v. Schuylkill Products Co., Inc., La.App., 111 So.2d 530; Malone, Louisiana Workmen’s *7 Compensation Law and Practice, sec. 275, p. 334.” [Ball v. American Marine Corp., 245 La. 515, 159 So.2d 138-139 (1963)]
 The wages paid by the defendant to plaintiff were at the rate of .75‡ for each motor cleaned, the employment being solely on a “piece-work” basis. In arriving at the amount of compensation to be awarded the court used the total amount earned by the plaintiff, and divided this amount by the number of days he worked to find a daily wage of $8.88. The total number of days plaintiff had worked was divided by the number of weeks these days spanned in arriving at a work week of two and three-fifths days. This was then multiplied by the daily wage ($8.88) in computing a weekly wage of $23.88. The court then found that 65% of this weekly wage amounted to $14.91, which it determined to be the weekly compensation rate. Although the daily wage of $8.88 is approved as properly computed in the manner above set forth, the court erred in fixing the work week at two and three-fifths days. With application of a six day week the employee is entitled to receive weekly compensation payments of $34.63. The weekly wage must be computed on a six day work week regardless of how many days a week the employee actually worked. Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399 (1956).
 The record fully substantiates the ruling of the trial court holding that defendant employer acted arbitrarily and capriciously with respect to the payment of compensation and the assessment of penalties and attorney’s fees under the provisions of LSA — R.S. 23:1201.2[1]. The trial court appropriately awarded as a penalty the sum of 12% of the total amount of the claim of plaintiff. However, in allowing the sum of $250.00 as attorney’s fees we think this amount grossly inadequate and the judgment should be amended to grant attorney’s fees of $2,000.00. Cain v. Employers Casualty Company, 236 La. 1085, 110 So.2d 108 (1959); Monk v. Louisiana Forestry Commission, La.App., 124 So.2d 351 (3rd Cir. 1960).
Before this court defendant-appellant has filed a motion to remand the case to the trial court for the purpose of taking testimony to show the extent to which the injury to the employee’s hand has recovered and that the plaintiff herein is no longer disabled in any manner. The evidence in support of the motion in our *8 opinion is insufficient to justify a remand. The motion is denied.
It is our holding that plaintiff should he awarded judgment as for total permanent disability benefit in the full sum of $34.63 per week for a period of 400 weeks commencing July 2, 1964, subject to a credit for all payments made up to and through September 11, 1964. It is also ordered that the attorney’s fees be increased to the sum of $2,000.00. As so amended, the judgment from which appealed is affirmed at defendant’s cost.

. “A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney’s fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney’s fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney’s fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney’s fees shall not apply in cases wherein the employer is found liable for penalties and attorney’s fees under the provisions of this Section.
“B. The notice required by the provisions of this Section may be given or made by any person claiming to be entitled to compensation, or by any one on his behalf, and shall contain the information and signature required by R.S. 23:-1293 and shall be given as required by R. S. 23:1294.”