LANDRY, Judge.
The pivotal issue presented by this appeal is whether acrophobia (fear of heights) resulting from an accident is totally and permanently disabling to a workman employed as a shipfitter. The trial court decided the matter in favor of the injured employee, Branum. Plaintiff’s employer, J. Ray McDermott and Company (McDermott), and its insurer, The Travelers Insurance Company (Travelers) have appealed. We affirm.
More precisely, the question to be resolved is whether ability to climb constitutes such an important part of the duties of a shipfitter, that inability to work aloft renders a shipfitter totally and permanently disabled.
As shown by the record, the principal duties of a shipfitter are to put together metal plates which have been cut or fashioned according to blueprint design by other craftsmen known as “burners”. A fitter arranges the plates in proper pattern and “tack welds” them in place on the vessel or rig under construction. Thereafter, the plates are welded up by still other craftsmen known as welders. Plaintiff was en *700 gaged as a shipfitter at McDermott’s Morgan City Shipyard Division, which facility was principally concerned with the construction of ships, tugboats and offshore drilling rigs. For his services, plaintiff was paid a wage of $3.85 per hour. In the performance of his duties, plaintiff was required to handle large sheets of steel from which were fashioned hull platings and various other portions of a vessel or rig. As a shipfitter, plaintiff was required to work on scaffolds in tacking plates to the upper hulls of vessels and to board vessels by means of a ladder to perform work aboard at certain construction stages. The degree and extent to which climbing is required is in dispute herein.
On January 2, 1970, plaintiff was working on a scaffold putting a rub rail around the stern of a tugboat under construction. Plaintiff was struck by an unknown object and knocked several feet to the ground. In the fall, plaintiff sustained a basal skull fracture and injuries to his neck. Plaintiff was hospitalized for a time and resumed work on or about March 16, 1970, subject to a medical restriction which prohibited plaintiff from climbing. Upon resuming work, plaintiff was employed in Mc-Dermott’s mill building performing such duties as fabricating motor foundations for vessels, constructing wall lockers or putting the bottom shell plates on vessel exteriors, all of which work could be performed on the ground or at heights not more than three or four feet above ground level.
In early August, 1970, plaintiff informed his fellow workers and superiors including his foreman, Don Fruge, and his superintendent, James Powell, that plaintiff was afraid to climb and would not perform any work which required climbing more than three or four feet above the ground.
Plaintiff’s unrefuted testimony is that Powell informed plaintiff that plaintiff knew he would have to climb when plaintiff was hired, and that when there was no work other than climbing, plaintiff would have to be laid off. Approximately two weeks later, plaintiff was putting the bottom plate on the hull of a tugboat. He was ordered to do some work which required his going aboard the vessel by way of a 20 foot aluminum ladder. Plaintiff refused, and upon the refusal being brought to Powell’s attention, Powell transferred plaintiff to other duties. Two days thereafter, plaintiff was ordered by his pusher, O. J. Gauthier, to cut the rub rail off the stern of a boat which involved mounting a scaffold about 20 feet high. Plaintiff declined whereupon Gauthier assigned plaintiff to another task. As plaintiff was gathering his tools to report to another area, the yard foreman, Lloyd Tabor, arrived upon the scene. Tabor informed plaintiff that Powell said that if plaintiff could not cut the rub rail, plaintiff could not remain on the job. Plaintiff then went to the timekeeper’s office, and waited for his termination papers. Plaintiff was issued termination papers signed by a Mr. Hoenke. The discharge noted that plaintiff was released for refusing to do assigned work.
The following pertinent facts are also stipulated: (1) Plaintiff’s acrophobia is genuine and directly attributable to the accident, and (2) before the accident, plaintiff’s duties required a certain amount of climbing, and that plaintiff has been deposed as to this issue which is submitted on the basis of plaintiff’s deposition. The record establishes beyond doubt that plaintiff can no longer climb and for him to do so poses a threat to his safety as well as to that of his fellow workers. It is significant that plaintiff testified without contradiction or refutation that he was discharged by McDermott because of his inability to climb. Plaintiff also testified, without contradiction, that following his discharge by McDermott, he applied for work with four other prospective employers whose names and addresses were given by plaintiff. All four declined to employ plaintiff upon being informed that plaintiff could not climb. Plaintiff eventually ob *701 tained work as a shipfitter with Ingall’s Shipyard, Pascagoula, Mississippi, in In-gall’s fabricating shop at a wage of $3.70 hourly. Ingall’s hired plaintiff knowing of his inability to climb, and placed plaintiff in its fabrication shop where climbing is not required. It suffices to state that the testimony of Doctors Luis Alvarez, Jr. and Thomas L. Rafferty, Psychiatrists, appearing of record, supports the stipulation that plaintiff is suffering from acrophobia induced by the accident. The expert testimony likewise shows that acrophobia is a form of neurosis for which there is no known cure or effective treatment.
The trial court declared plaintiff totally and permanently disabled. Plaintiff was awarded compensation at the rate of $49.00 for 489 weeks, 11 weeks compensation having been paid by defendants. In essence, the trial court found that the duties of a shipfitter involved considerable climbing, and that since plaintiff admittedly could no longer climb, plaintiff was totally disabled notwithstanding plaintiff was presently employed in performing duties similar to those of a shipfitter. In so finding, the trial court relied primarily upon Pohl v. American Bridge Division of United States Steel Corp., La.App., 109 So.2d 823.
Appellants contend the lower court erred in holding plaintiff totally and permanently disabled rather than partially disabled as held in the factually similar cases of Peltier v. Liberty Mutual Insurance Company, La.App., 230 So.2d 591, and Falgoust v. Maryland Casualty Co., La.App., 22 So.2d 312.
In a suit for workmen’s compensation benefits, the injured worker bears the burden, as in any other civil action, of establishing his claim by a preponderance of evidence. Hebert v. Your Food Processing and Warehouse, Inc., 248 La. 197, 177 So. 2d 286.
In cases of this nature, the question is whether the injured employee is disabled from performing work of any reasonable character within the meaning and intendment of the compensation statute — meaning disability to perform work of the same or similar description, kind or character (not necessarily the identical previous work) to that in which the employee was engaged when injured. Morgan v. American Bitumuls Co, 217 La. 968, 47 So.2d 739; Wright v. National Surety Corp, 221 La. 486, 59 So.2d 695.
Due to the illimitable factual variations presented to the Courts, no hard and fast rule can be laid down for application of the foregoing pertinent principles. Each such case must be resolved in the light of its own peculiar circumstances. Brannon v. Zurich General Accident and Liability Ins. Co., 224 La. 161, 69 So.2d 1.
We find the present matter within the ambit of the rule announced in Lawless v. Steel Erectors, Inc, 254 La. 37, 222 So. 2d 849. Lawless involved an iron worker who was disabled from performing heavy work. Following his injury, the employee was hired as a foreman, a supervisory position considered light work. In essence, the court held the employee totally disabled to perform the skilled job of an ironwork-er because such an employee could not choose his work, and could not adequately compete in the labor market against an ironworker capable of doing all aspects of an ironworker’s job. The court noted in Lawless that an ironworker capable of doing only light work was most likely to find himself without light work to do. We note that in Butzman v. Delta Shipbuilding Co, La.App, 21 So.2d 80, which involved an injured shipfitter, the employee was declared totally and permanently disabled because of his inability to climb or go on scaffolds. In Butzman, the court found that the injured employee who returned to work as a burner was engaged in a different occupation.
We disagree with appellants’ contention that Peltier and Falgoust, above, are controlling in this instance. In Peltier, the injured worker, an electrical lineman, sus *702 tained a foot injury which prevented his climbing poles. Since the injury, the employee was engaged full time as an “inside electrician” at a higher rate of pay. The employee experienced no difficulty in obtaining employment as an inside electrician. The court found in Peltier that the electrical field afforded broad opportunities for employment, and that inability to climb did not seriously affect the employee’s employability as demonstrated by plaintiff’s continuous employment since his injury.
Falgoust, above, concerned a skilled carpenter who sustained a 25 to 50% loss of function of his left arm. Subsequent to his injury, plaintiff in Falgoust was employed as a skilled carpenter at his former wages. His duties were limited to cabinet making and other similar light work because of his inability to perform the heavy work required of a journeyman carpenter. Plaintiff contended he was totally disabled, and that his present ability to obtain light work was due to a shortage of skilled carpenters. Plaintiff offered his own testimony, and that of his foreman, as proof of his inability to climb. In finding the employee only partially disabled, the court in effect concluded plaintiff had failed to establish his inability to climb with that degree of certainty required by law.
We find Pohl v. American Bridge Division of United States Steel Corp., La.App., 109 So.2d 823, pertinent but not necessarily controlling. In Pohl, above, an ironworker claimed total permanent disability due to neurosis which prevented his climbing. The record showed that an ironworker was required to perform approximately 75% of his duties aloft, and that while plaintiff could perform effectively at ground level, he could not climb. It also appeared that it was customary to allot ground level work to older men, and that if an employer had a choice, a man who could climb would be hired in preference to one who could not. In Pohl, plaintiff was found totally disabled because he could not climb, which activity was involved in approximately 75% of his work.
We do not interpret Pohl, above, as establishing the rule that in the case of an employee who must climb, it must be found that climbing is involved in 75% of his work or duties before he can be deemed totally and permanently disabled. We regard Pohl and Lawless, above, as authority for the rule that where a workman is disabled from performing a substantial part of his duties with the result that he cannot successfully compete with able-bodied workmen in the same classification, he is deemed totally and permanently disabled. That such an employee is engaged in doing some portions of his former work at essentially the same pay following injury does not necessarily mean disability is not total. If his competitive ability is impaired, his degree of disability is total notwithstanding his employment in a similar undertaking by an employer who may have a special need for the limited service the employee is capable of performing. The reason for this rule is that such employment is subject to the whim or needs of an employer and does not accord with the general hiring practice or custom in the industry or work involved.
The only testimony of record concerning the amount of climbing required of a ship-fitter was given by plaintiff herein. Plaintiff’s testimony was to the effect that he did not give much thought or consideration to the percentage of time spent on the ground or in the air. He estimated that in the shop from 15 to 30% of the time was spent aloft, but that he never thought about whether work was on the ground or overhead. He also stated that when working in the yard, he imagined that most of his work was in the air, but again, the percentage never occurred to him. He frankly stated that before his injury, it was all the same to him whether his work was on the ground or in the air. On the basis of this testimony, the trial court found that a substantial portion of plaintiff’s work was aloft. We concur in this conclusion.
*703 We can find no better evidence of plaintiff’s inability to compete with fully able-bodied shipfitters in the ordinary labor market than his own employer’s termination of plaintiff’s services because of plaintiff’s inability to climb. McDermott’s attitude, in this respect, was shared by four other prospective employers who likewise declined to hire plaintiff as a shipfitter because plaintiff could not climb. It matters not that plaintiff was eventually hired by an employer who could fit plaintiff into a special niche because of an individual need not usually found in the ordinary course of the work or industry involved.
The judgment of the trial court is affirmed at appellants’ cost.
Affirmed.