BEER, Judge.
Plaintiff-appellant, Frank O’Donnell, claims total and permanent disability caused by an on-the-job injury resulting in painful and complex fractures of the long and index fingers of his right hand. The trial court entered judgment in his favor but limited the award to a “scheduled loss,” and he appeals.
At the pertinent time, O’Donnell was forty-three years old, married and father of three children. He had lost his left arm below the elbow prior (and unrelated in any way) to his employment by the City of New Orleans, Civil Service System, as a watchman with various clerical duties at the city incinerator. His duties included answering phones and inspecting the building periodically for trespassers or vandals. On Sunday, March 17, 1974, while O’Donnell was acting within the scope of his employment, he injured his hand when he attempted to close two manually operated elevator doors. He returned to work at the same job on March 25, 1974, eight days after the accident, and worked without interruption until he resigned on June 15, 1975.
Anthony Stant, a foreman, testified that plaintiff was hired on February 12, 1974; that there were no witnesses to the accident; that O’Donnell had experienced no other injuries during his employment; and that O’Donnell’s stated reason for resignation was because of a baby-sitting problem regarding his children and not that he (O’Donnell) was apprehensive about being left alone on weekends. Finally, Stant testified that there had been no complaints relative to Mr. O’Donnell’s work performance either before or after the accident.
Aaron Landry, also a foreman, substantiated Stant’s testimony regarding O’Donnell’s competency to perform his work before and after the accident.
Dr. Matko Milicic, an orthopedic surgeon, did not testify, but his deposition and medical reports were introduced and admitted into evidence. He first saw O’Donnell in May, 1974, and continued to see him until December 18,1975. Dr. Milicic opined: “As far as the permanent partial disability is concerned it should be estimated as approximately 25% of the right index finger which *983 would be approximately 5% of the whole right hand and 25% of the right long finger which would be approximately another 5% of the whole right hand giving total permanent partial disability as approximately 10% to 15% of the whole right hand. It is to be remembered that Mr. O’Donnell is a below elbow amputee on the left, and the right hand is the only hand he has.” Dr. Milicic further testified that O’Donnell “ . . . still has a hand with which he can perform rather adequately and should be fairly adequate in performing many jobs. . . . ” He felt “ . . .if there would be jobs not requiring grasping, it seems to me that he should be able to perform it.” He refused to categorize the pain suffered by O’Donnell as extreme.
O’Donnell testified that he resigned because he was afraid to work at the incinerator plant by himself on weekends because he doubted if he could defend himself in the event he was attacked. He says that he was ashamed to reveal his fear of this inability but also directly contradicts the testimony of Anthony Stant, denying that the baby-sitter problem was his stated reason for quitting. He admits that he was not persuaded in any way to quit his job but acted upon his own accord. At the time of the trial (since quitting his job), O’Donnell acknowledged that he performed odd jobs for friends including but not limited to paneling, “a lot of hammering” and painting houses. He says that he experiences pain “ . . . like a toothache . . . (I)t’s shooting pain, sometimes it throbs.”
Lillian Deslattes, who qualified as an employment consulting expert (certified employment consultant), was of the opinion that O’Donnell would have serious difficulty securing employment but admitted that he “evidently” could obtain employment with the City of New Orleans, or in the public sector of the labor market. Stant acknowledged that city policy encourages hiring of disabled individuals if possible. Deslattes also acknowledged that O’Donnell would encounter serious employment difficulties, even if he still had a totally uninjured right hand.
Able counsel for O’Donnell argues that the trial court erroneously applied the test for a skilled laborer to O’Donnell, who is a common laborer. He contends that cumulative disabilities should be the weighing factor when applying the correct test. The City urges that permanent total disability was not proven by a preponderance of the evidence and contends that the manifest error rule requires affirmation of the trial court’s judgment.
Our review is essentially limited to a determination as to whether the trial court erred in finding that O’Donnell was not totally and permanently disabled under the circumstances of this case.
Factors for consideration by the trial judge, in addition to O’Donnell’s return to and ability to perform his pre-injury job, included:
1. O’Donnell’s existing disability prior to the subject injury;
2. The fact that O’Donnell was hired as a watchman and was capable of competing with other able-bodied persons for that position before and after his accident;
3. The fact that during O’Donnell’s post-injury employment with the City, the latter had no complaints about his job performance;
4. The fact that O’Donnell voluntarily terminated his employment;
5. The fact that O’Donnell’s testimony at the trial regarding his reasons for quitting his job was directly contradicted by a disinterested witness; and
6. The fact that the public labor sector creates a considerable number of jobs and is part of the general labor market.
O’Donnell relies upon Funderburk v. Southwestern Iron Corporation, 180 So.2d 4 (La.App. 2nd Cir., 1965). There, plaintiff had lost his left arm in a childhood accident. He lost the middle finger of his right hand in the accident covered by the Workmen’s Compensation Act. In finding total and permanent disability, the court concluded that it would be “ . . improbable that plaintiff could obtain employment at a service station or the work he was doing at the *984 time of the accident.” “ . . . (T)he employee will necessarily find it most difficult to perform the same work in the future even if there should be complete healing of his finger and hand.” The emphasis of the court in Funderburk was upon plaintiff’s disability to return to the “same work.” Here, O’Donnell was able to and indeed did return to his previous employment a week after the accident. From that time until he quit, O’Donnell’s employer had no complaints about O’Donnell’s performance on the job and no complaints from O’Donnell that he had difficulty or experienced pain in doing his work. Funderburk is completely distinguishable.
The other cases relied upon by O’Donnell are also patently distinguishable. Deshotels v. Fidelity and Casualty Co. of New York, 324 So.2d 895 (La.App. 3rd Cir., 1975) writ denied March 19, 1976, involved a claimant who suffered a loss of vision in his right eye thus disabling him from cutting trees which was his profession. The court found that due to his experience in tree-cutting, “ . . . all his job tasks make him at least a semi-skilled worker.” Branum v. J. Ray McDermott and Company, 271 So.2d 698 (La.App. 1st Cir., 1972), dealt with a shipfitter who suffered from acrophobia following an on-the-job fall from a scaffold. After returning to work for J. Ray McDer-mott & Company for a short term, the claimant was dismissed due to his disabling condition — viz., acrophobia. The court stated “(w)e can find no better evidence of plaintiff’s inability to compete with fully able-bodied shipfitters in the ordinary labor market than his own employer’s termination of plaintiff’s services because of plaintiff’s inability to climb.”
Public sector entities, such as the City of New Orleans j make it a continuing practice to offer job opportunities to amputees and cripples and to maintain them in gainful employment. The fact that this was taken into account in the trial court’s judgment has both a sound legal and factual foundation. O’Donnell obviously was and remains employable in the public sector of the labor market, and the spirit of the law perceives this public sector as a representative part of the flexible general labor market. The trial court’s observation is noteworthy: “The City is a source of employment for amputees and cripples and as such is meeting a obvious need in this community.”
Prior to the injury which forms the basis of this suit, O’Donnell’s status in the general labor market was that of a man who had experienced a below the elbow amputation of his left arm. His status cannot be “laundered” by his injury if he is able — as the record indicates and the trial judge found as a fact — to return not only to the same job but to the same sector of the general labor market.
A workmen’s compensation claimant must prove permanent and total disability by a reasonable preponderance of evidence (Tyler v. Owens Illinois, Inc., 289 So.2d 893 (La.App. 4th Cir., 1974) and Prim v. City of Shreveport, 297 So.2d 421 (La. 1974); and the trial court’s findings of fact based upon its weighing of the evidence will be reversed only upon a showing of manifest error (Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The trial court’s very detailed written reasons include the following conclusions:
“This watchman returned to his same employment for a year following this accident with no complaints from anyone, including himself. He could and did perform the same work. He voluntarily quit and the Court does not believe the story he gives as to why he quit and even if it did, there is little merit to it. The same situation as alleged by him, fear of being attacked, existed before as it did after the accident, and it exists in every neighborhood in the city, not only at the incinerator where he was employed. Medical evidence shows that he was able to perform the same duties following the accident and in fact, he did for a year or more.”
Accordingly, we affirm. Costs of this appeal are to be paid by appellant.

AFFIRMED.